## LYDIA MELE *v.* CITY OF HARTFORD
## (SC 17127)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 12—officially released August 31, 2004

*Ann F. Bird*, assistant corporation counsel, with whom, on the brief, was *Alexander Aponte*, corporation counsel, for the appellant (defendant).

*Mark E. Blakeman*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether there is sufficient evidence in the record to support the determination of the workers' compensation commissioner for the first district (commissioner) that the defendant discriminated against the plaintiff for exercising rights afforded to her under the Workers' Compensation Act (act) in violation of General Statutes

§ 31-290a.[1] The defendant, the city of Hartford, appeals[2] from the commissioner's decision in favor of the plaintiff, Lydia Mele, claiming, among other things, that the evidence was insufficient to prove that the defendant, through the plaintiff's direct supervisors, intended to discriminate against her for exercising her rights under the act. We agree and, accordingly, we reverse the decision of the commissioner.

The plaintiff filed this complaint with the workers' compensation commission pursuant to § 31-290a (b) (2), claiming that the defendant, through the actions of the plaintiff's direct supervisors, discriminated against

---

[1] General Statutes § 31-290a provides: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

[2] The defendant appealed from the commissioner's decision to the Appellate Court pursuant to § 31-290a (b) (2), and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

her for exercising rights under the act, and that the discrimination forced her to take an unpaid leave of absence from her job as a guidance counselor for the defendant's board of education (board). The commissioner held five hearings on the plaintiff's claim over the course of six months, and thereafter issued a decision in the plaintiff's favor, ordering the defendant to pay the plaintiff back wages and lost benefits for the 1995–96 school year, as well as attorney's fees. This appeal followed.

The commissioner made the following findings of fact. The plaintiff began working for the board in 1972, first as a teacher and later as a guidance counselor. Between March, 1985, and September, 1994, the plaintiff sustained various work-related injuries for which she filed claims and received workers' compensation benefits. Prior to September, 1994, the plaintiff experienced continued pain in her right foot and ankle, which had been injured in 1988. Due to this continuing pain, the plaintiff was subject to physician-ordered restrictions requiring her to limit her stair use.

During the 1993–94 school year, the plaintiff was employed as a guidance counselor at the South Middle School (middle school) in Hartford. At some point during the year, the plaintiff learned that construction and renovation would commence at the middle school during the summer of 1994, and continue into the 1994–95 school year. Because of the pending construction, and because the middle school did not have an elevator, the plaintiff applied for a transfer to several available positions in other schools for the 1994–95 school year. Her requests for transfers, however, were denied, and, as a result, the plaintiff continued to work at the middle school for the 1994–95 school year.

The plaintiff, on the advice of her physician, took several days off from work at the beginning of the

1994–95 school year because of gastrointestinal bleeding caused by anti-inflammatory medications she had been taking for pain and swelling in her right foot and ankle, which had been injured in 1988. At this time, the middle school was under new administration. The plaintiff telephoned her new supervisors, principal James Fagan and vice principal Mary Holloway, to inform them of her condition and alert them that she would not be reporting to work at the middle school until after September 11, 1994. When the plaintiff did report for work on or about September 11, 1994, she provided Fagan with a note from her physician excusing her absences.

Upon returning to work, the plaintiff discovered that her first floor office had been taken away from her to be used as a classroom for the duration of the 1994–95 school year, and that she had been reassigned to a small office that did not provide sufficient space for group counseling. Furthermore, special education students were moved into the foyer just outside her door. Upon learning of her reassignment, the plaintiff met with both Fagan and Holloway to request different available office space on the first floor. Her request, however, was denied, and the office space that she had requested was given to another guidance counselor who had less seniority than the plaintiff. Instead, Fagan and Holloway gave the plaintiff additional space on the second floor. The plaintiff, who, at the time was walking with a limp and required the use of a cane due to her foot injury, informed Holloway that using the stairs to get to the additional space would be a hardship for her. The plaintiff, furthermore, was required to walk up and down the stairs every day because her files were stored in her first floor office, and because there was no outside telephone line in the additional second floor office space. Holloway, nevertheless, did not offer the plaintiff additional space on the first floor.

The commissioner further found that, at some point in September, 1994, Holloway ordered the plaintiff to supervise students in the cafeteria before school began in the mornings, despite the plaintiff never having been required to perform such a duty in all her previous years of employment with the board, and despite cafeteria duty ordinarily being a duty performed by a school's principal or vice principal. The plaintiff wrote to Holloway, informing her that she could not volunteer for cafeteria duty because of foot and ankle problems and bleeding from the anti-inflammatory medications. Holloway ignored the plaintiff's note, however, and continued to require the plaintiff to perform cafeteria duty. On one occasion, Holloway noticed that the plaintiff was sitting while on cafeteria duty and advised her that she had to stand, and that if Holloway found her sitting again, she would be given a job requiring standing.

Also, in September, 1994, the plaintiff requested a proximal handicap parking space in the parking lot off of Campfield Avenue (Campfield lot), because the school entrance at the Campfield lot was the only entrance that would not require the plaintiff to use a set of stairs. Furthermore, the entrance at the Campfield lot was closest to the main office, where the plaintiff was required to sign into work each morning. Fagan and Holloway knew that the plaintiff had a handicap parking sticker, but they nonetheless informed her that she could not park in the handicapped parking spaces in the Campfield lot. Instead, they assigned her a space in a lot in the back of the school, thereby requiring that the plaintiff use a staircase.

As a result of her parking space and additional office space assignments, as well as the requirements that she sign in at the main office and perform cafeteria duty each morning, it was necessary for the plaintiff, on a daily basis, to use several flights of stairs and walk down several long corridors. Because of this necessity,

and because she was required to stand during cafeteria duty each morning, the plaintiff became concerned about her physical condition as well as her job conditions at the middle school. At some point during September or October, 1994, the plaintiff met with representatives from her union to discuss what options for the following school year might be available for her. As a result of this discussion, the plaintiff decided to apply for a leave of absence for the 1995–96 school year. Pursuant to her union contract, the plaintiff was required to file her request for a leave of absence with the board before the end of January, 1995. It is undisputed that the plaintiff filed her request for a leave of absence on October 23, 1994. Her request was approved by Fagan on December 1, 1994.

At some point in January, 1995, the plaintiff filed a "first report of injury," claiming that the construction and renovation work at the middle school had created respiratory problems for her. Throughout the remainder of the 1994–95 school year, the plaintiff provided Fagan and Holloway with notes from her physician restricting her activities and excusing various absences. On January 30, 1995, the plaintiff received a letter of reprimand from Fagan, which was later rescinded after the plaintiff discussed it with him.

In February, 1995, the plaintiff applied for a transfer to an available position at Weaver High School. The transfer request was denied. On March 22, 1995, the plaintiff received a letter from the board notifying her that her request for an unpaid leave of absence for the 1995–96 school year had been approved. The plaintiff, however, continued to apply for transfers to other schools, because she did not want to have to take an unpaid leave of absence. To this end, the plaintiff applied for various transfers throughout April and May of 1995. Furthermore, the plaintiff also attempted to convert her unpaid leave of absence into a paid sabbati-

cal. That request was denied in April, 1995, as were her various requests for transfers.

Meanwhile, the plaintiff's foot condition continued to deteriorate because of the distances she was required to walk and the stairs she was required to climb at work. In a medical report dated March 15, 1995, the plaintiff's physician stated that the plaintiff's job was making her foot condition worse. As a result, the plaintiff required surgery in April, 1995.

On May 31, 1995, the plaintiff received her annual job evaluation. The evaluation, in contrast to previous evaluations she had received, was not particularly positive, and the plaintiff was deeply upset by it. She subsequently filed an objection to the evaluation as well as a grievance pursuant to her union contract, and, as a result, the evaluation was changed from an overall rating of "poor," to an overall rating of "good."

The commissioner also found that the plaintiff continued to try to make arrangements to transfer to other schools during the summer of 1995, but all of the plaintiff's requests for transfers were denied. At some point, Fagan and the board's associate administrator of human resources, Thaddeus Obieglo, advised the plaintiff that the denials of her transfer requests were probably due to her numerous absences. The commissioner further found that, because her transfer requests and her request for a sabbatical were denied, the plaintiff was forced to take an unpaid leave of absence for the 1995–96 school year. In general, the plaintiff had been forced to take the leave of absence because the middle school did not have an elevator, and she could no longer continue using the stairs and walking long distances. Moreover, the continuing construction and renovation at the middle school had created respiratory problems for the plaintiff. As a result of being forced to take the leave of absence, the plaintiff lost her salary and bene-

fits for the 1995–96 school year. Furthermore, she was required to pay for her own medical insurance and teacher's retirement for that year out of her personal savings.

As a result of these factual findings, the commissioner reached the following conclusions: (1) the plaintiff suffered compensable work injuries on March 1, 1985, October 13, 1988, and September 26, 1990; (2) the plaintiff had physician-ordered restrictions in September, 1994, and continuing thereafter as a result of her work-related injuries; (3) Fagan and Holloway knew that the plaintiff was limping and walking with a cane in September and October, 1994, and that she had received notes from her physicians indicating her injuries and restrictions; (4) the board, through Fagan and Holloway, failed to honor the plaintiff's restrictions and accommodate her in 1994 and 1995, and, in fact, caused greater harm to the plaintiff by requiring her to walk up and down stairs, giving her an office on the second floor, requiring her to do cafeteria duty, which necessitated excessive walking, and that their conduct violated the plaintiff's rights pursuant to § 31-290a; (5) the board, through Fagan and Holloway, discriminated against the plaintiff in violation of § 31-290a because she had exercised her rights, which are afforded to her under the act; (6) the discrimination included failure to give proximal handicap parking, failure to accommodate a request for available classroom space, ordering cafeteria duty, filing reprimands that were later repealed or rescinded, giving a poor evaluation that was later changed to a good evaluation, and denying all requests for transfers to other schools, even though there were positions open and available for which she was qualified, all in violation of General Statutes §§ 31-290a and 31-313;[3] and (7) as

---

[3] General Statutes § 31-313 provides: "(a) (1) Where an employee has suffered a compensable injury which disables him from performing his customary or most recent work, his employer at the time of such injury shall transfer him to full-time work suitable to his physical condition where such work is available, during the time that the employee is subjected to

a result of the discrimination, the plaintiff is entitled to receive back wages for the school year September, 1995, through June, 1996.[4]

In addition to the commissioner's findings and conclusions, our review of the record and transcripts discloses the following additional undisputed facts, as well as the absence of certain facts. The plaintiff and Obieglo testified that, when an employee of the board files a claim for workers' compensation benefits, the first step is the filing of a "first injury report," which must be

medical treatment or rehabilitation or both and until such treatment is discontinued on the advice of the physician conducting the same or of the therapist in charge of the rehabilitation program or until the employee has reached the maximum level of rehabilitation for such worker in the judgment of the commissioner under all of the circumstances, whichever period is the longest. (2) The commissioner shall conduct a hearing upon the request of an employee who claims his employer has not transferred him to such available suitable work. Whenever the commissioner finds that the employee is so disabled, and that the employer has failed to transfer the employee to such available suitable work, he shall order the employer to transfer the employee to such work.

"(b) The commissioner shall conduct a hearing upon the request of an employee claiming to be unable to perform his customary or most recent work because of physical incapacity resulting from an injury or disease. Whenever the commissioner finds that the employee has such a physical incapacity, he shall order that the injured worker be removed from work detrimental to his health or which cannot be performed by a person so disabled and be assigned to other suitable full-time work in the employer's establishment, if available; provided the exercise of this authority shall not conflict with any provision of a collective bargaining agreement between such employer and a labor organization which is the collective bargaining representative of the unit of which the injured worker is a part.

"(c) Whenever the commissioner finds that an employer has failed to comply with the transfer requirements of subdivision (1) of subsection (a) of this section, or has failed to comply with any transfer order issued by him pursuant to this section, he may assess a civil penalty of not more than five hundred dollars against the employer. Any appeal of a penalty assessed pursuant to this subsection shall be taken in accordance with the provisions of section 31-301. Any penalties collected under the provisions of this subsection shall be paid over to the Second Injury Fund or its successor."

[4] The commissioner also found that the plaintiff, in pursuing her discrimination claim, had incurred $30,242 in attorney's fees for which she could be compensated pursuant to § 31-290a (b) (2).

signed by the principal of the school at which the injury occurred.[5] From there, the claim goes to a centralized labor relations office, which manages all of the various aspects of the claim, including determining whether time off required by the employee should be designated as compensable workers' compensation time or as "sick days," of which the employee has a limited number per year under the union's contract with the board. All medical documentation is handled solely by the centralized office, unless the employee is subject to physician-ordered work restrictions stating that the employee is temporarily unable to perform certain work-related tasks or duties due to work-related injuries. Such restrictions are provided to the employee's immediate supervisors, namely, the principal and vice principal of the school where the employee works, and they occasionally may be placed in the employee's file at the board's central human resources department. Fagan further testified that principals and vice principals maintain personnel files at their schools, which contain employees' evaluations and performance reports, as well as physicians' notes and attendance records. Fagan also testified that each year his secretary goes through each employee's file and removes physician notes and other things not related to the employee's job performance from the previous year. Fagan and Obieglo testified that principals and vice principals rarely, if ever, review the personnel files of their employees, which are kept at the board's central human resources department.

No one testified regarding where the documentation of the workers' compensation claims that the plaintiff submitted into evidence was located; so it is unknown

[5] It is undisputed that the plaintiff's compensable injuries, which occurred in 1985, 1988 and 1990, did not occur at the middle school, and that the plaintiff's supervisors at the time of those injuries were not Fagan and Holloway.

whether these claims and their related paperwork were on file in the board's human resources office or only at the defendant's centralized labor relations department. Obieglo, however, testified that the board's human resources department does not maintain any files related to an employee's workers' compensation claims, and that he did not remember seeing any documentation of the plaintiff's claims in his files. The files submitted into evidence by the plaintiff show that her claims for workers' compensation benefits in 1985, 1988 and 1990, were resolved by voluntary agreement. These files also show that she continued to seek periodic treatment for her compensable injuries, and that, in the fall of 1995, during her unpaid leave of absence, she was ultimately found to have a 10 percent permanent partial disability of the right foot and ankle. The plaintiff testified that the workers' compensation claims that she had filed in 1985, 1988 and 1990 were "filed long before [1994]," and that "workers' compensation had paid [those] bills." Moreover, the plaintiff testified that, when she reported to work in September, 1994, neither Fagan nor Holloway had any knowledge that she had filed claims for workers' compensation in 1985, 1988 and 1990. The plaintiff testified that she understood that they did not know about her claims, because Fagan asked her why she was limping. The plaintiff further testified that it was her belief that she was mistreated by Fagan and Holloway during the fall of 1994, because she had been absent for the first two weeks of school and had requested accommodations to ameliorate mobility difficulties related to her work-related injuries. The plaintiff also testified, and the leave request form she submitted into evidence indicated, that she applied for the unpaid leave of absence on October 23, 1994.

The commissioner also heard undisputed testimony from Fagan and Holloway that, before coming to work at the middle school during the summer of 1994, neither

of them had met the plaintiff or had any knowledge of her 1985, 1988 and 1990 workers' compensation claims, or whether she had any physician-ordered work restrictions relating to those claims. The commissioner also heard undisputed testimony from Fagan and Holloway that neither of them had ever reviewed the plaintiff's personnel file at the board's centralized human resources office, where the board kept all information concerning her workers' compensation claims. The only work restrictions introduced into evidence were two notes and one letter from the plaintiff's physicians. The first note, dated February 25, 1991, was provided by the plaintiff to her supervisors at Fox Elementary School, where she worked at that time. It stated that the plaintiff "should use the elevator indefinitely due to a [knee] injury [because] she is unable to go up and down stairs." The second note, dated April 29, 1991, was provided by the plaintiff to her supervisors at Fox Elementary School, and a copy was included in her personnel file at human resources. It stated that the plaintiff "should be allowed to use the elevator at work for the remainder of the school year." The note went on to state that the plaintiff "will be re-evaluated for the need the next year." There is no evidence in the record that the plaintiff was, in fact, reevaluated or that the restriction was extended beyond the 1990–91 school year.[6] The third note, dated December 2, 1994, was provided by the plaintiff to Fagan and Holloway, and a copy was placed in her personnel files in the human resources department. It read as follows: "no prolonged standing more than [two] hours at a time—limit stair use." Thus, it did not refer to her disability as work-related in any way. The plaintiff testified that, prior to December 2, 1994, she never had provided Fagan or Holloway with

[6] It is undisputed that Fox Elementary School had an elevator, but that the middle school, where the plaintiff was working during the 1994–95 school year, did not.

physician-ordered restrictions. There was no evidence presented that Fagan or Holloway knew about the 1991 restrictions relating specifically to work conditions at Fox Elementary School.

The record further discloses that, when a board employee plans to be out of work for longer than ten days due either to an injury or illness that is not related to work, or to a work-related illness or injury, the employee must notify the principal of the school where she is employed, state the reasons for requesting the time off, provide a note from a physician, and submit a form for the principal's signature indicating whether the time off should be attributed to personal sick time, or to workers' compensation. That form then goes to the board's human resources office and, if it is related to workers' compensation, to the defendant's central labor relation's department. The record does not contain the form that the plaintiff was required to submit for Fagan's signature when she took two weeks off at the beginning of the 1994–95 school year, but it does contain the note from her physician that she submitted to Fagan in order to document her need to take time off. That note read: "Please excuse from work until further notice." The plaintiff testified that when she gave Fagan and Holloway this note, she told them that she had been experiencing gastrointestinal bleeding due to medications she was taking for a work-related injury. A computerized printout of the plaintiff's attendance record for the 1994–95 school year, however, reveals that the plaintiff either did not request or was not given workers' compensation time for those first two weeks of school. Rather, the record shows that the time off was designated as sick time, and not workers' compensation time.

On appeal to this court, the defendant claims, among other things, that there was insufficient evidence in the record to support the commissioner's factual findings.

We necessarily evaluate this claim under the burden shifting analysis required in § 31-290a claims as set forth by this court in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990). We agree with the defendant's claims of evidentiary insufficiency.

## I

As a threshold matter, we take this opportunity to clarify the standard of review governing an appeal from a commissioner's decision in a § 31-290a claim. Ordinarily, an appellate court's review of a commissioner's factual findings relating to a claim under the act is governed by the standard articulated in *Biasetti* v. *Stamford*, 250 Conn. 65, 71, 735 A.2d 321 (1999): "The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.)

Cases involving claims of discriminatory retaliation brought pursuant to § 31-290a, however, are employment discrimination actions, which are usually filed as plenary civil actions in the Superior Court. Section 31-290a also allows a plaintiff to file a claim with the workers' compensation commission, and the law to be applied in either venue is the same. See footnote 1 of this opinion. Moreover, § 31-290a (b) (2) directs parties "aggrieved by the decision of the commissioner" to appeal from the decision directly to the Appellate Court, and not to the workers' compensation board of review, as would be the case with an ordinary workers' compensation claim. The only difference between the two venues is the plaintiff's ability, when filing in the Superior Court, to request punitive, as well as compensatory,

damages. This difference, however, should not require that decisions of the Superior Court and decisions of the commissioner, rendered pursuant to § 31-290a claims, be reviewed on appeal under differing standards. We conclude, therefore, that because the commissioner is essentially fulfilling the role of a trial court in adjudicating § 31-290a claims, the commissioner's findings of fact and conclusions of law, like those of a trial court, should be reviewed on appeal under the same standard. We further conclude, for the following reasons, that this standard should be the clearly erroneous standard.

In *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998), we looked to federal case law in determining what standard of review was appropriate in an employment discrimination case, when such cases present mixed questions of both law and fact. We concluded that under "the fact-bound nature of determinations" regarding what actions, as a matter of law, may constitute employment discrimination, a clearly erroneous standard was most appropriate. Id., 165. Under such a standard, "[a] finding . . . is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. With this standard of review in mind, we turn to the defendant's claim that the commissioner's conclusion that the defendant discriminated against the plaintiff in retaliation for her exercise of rights afforded to her under the act was clearly erroneous.

Section 31-290a (a) prohibits an employer from discharging or otherwise discriminating against an employee because the employee had filed a claim for workers' compensation benefits or otherwise exercised her rights under the act. Ever since this court's holding

in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53, we have looked to federal employment retaliation law for guidance "[i]n setting forth the burden of proof requirements in a § 31-290a action . . . . In *McDonnell Douglas Corporation* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the United States Supreme Court set forth the basic allocation of burdens and order of presentation of proof in cases involving claims of employment discrimination. The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the [factfinder] . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citation omitted; internal quotation marks omitted.) *Diaz* v. *Housing Authority*, 258 Conn. 724, 730, 785 A.2d 192 (2001); see also *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 53–54.

We have stated on several occasions that this burden shifting "methodology is intended to provide guidance to fact finders who are faced with the difficult task of determining intent in complicated discrimination cases. It must not, however, cloud the fact that it is the plaintiff's ultimate burden to prove that the defendant inten-

tionally discriminated against her . . . ." *Craine* v. *Trinity College*, 259 Conn. 625, 637, 791 A.2d 518 (2002); see also *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 517, 832 A.2d 660 (2003), citing *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ("[t]he ultimate burden . . . rests with the [plaintiff] to establish, by a preponderance of the evidence, that the employer intentionally discriminated against [her]").

## II

The initial step in analyzing a claim under § 31-290a is to determine whether the plaintiff has established a prima facie case of discrimination. "Under the [*Ford*] burden-shifting analysis, establishing a prima facie case of discrimination creates a presumption that the defendant acted illegally. . . . To establish a presumption is to say that a finding of the predicate fact (here, the prima facie case) produces a required conclusion in the absence of explanation . . . ." (Citation omitted; internal quotation marks omitted.) *Craine* v. *Trinity College*, supra, 259 Conn. 643. "To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right afforded her under the act and that the defendant discriminated against her for exercising that right." *Diaz* v. *Housing Authority*, supra, 258 Conn. 731.

We note that, for the most part, the commissioner's findings were taken verbatim from the plaintiff's proposed findings of fact. We further note that the commissioner's decision did not follow the *Ford* burden shifting framework. For example, the commissioner did not state that the plaintiff established her prima facie case or identify what specific rights under the act she had exercised and for which she was discriminated against. We, therefore, must look to the claims that the plaintiff

made before the commissioner to determine what rights under the act, if any, she may have exercised.

As a threshold matter, it is important to note what claims the plaintiff did *not* present. She did not claim, for instance, that Fagan and Holloway discriminated against her for filing claims for the injuries she sustained in 1985, 1988 or 1990. Nor does she claim that Fagan and Holloway discriminated against her for seeking medical treatment for those injuries.[7] In fact, the plaintiff testified that she doubted that Fagan and Holloway even knew about her workers' compensation claims or the underlying injuries when she first met them in September, 1994, because they asked her why she was limping.

Instead, the plaintiff claimed that Fagan and Holloway discriminated against her for (1) taking two weeks off at the beginning of the 1994–95 school year, and (2) requesting additional office space on the first floor, proximal parking, and exemption from cafeteria duty because of her work-related injuries. We assume, therefore, that the plaintiff claimed, and the commissioner found, that, by taking the time off at the beginning of the school year and requesting first floor office space, proximal parking and exemption from cafeteria duty, she was exercising rights afforded to her under the act for which she subsequently was discriminated against

---

[7] The commissioner found that, from March, 1985, through September, 1994, the plaintiff had sustained various compensable work-related injuries. The record, however, discloses that, as of September, 1994, the plaintiff had not filed a claim for a compensable work-related injury since September, 1990. Although the record does disclose evidence that the plaintiff continued to seek treatment for the compensable injuries that she sustained in 1985, 1988 and 1990, and that she sought workers' compensation time off for treatment, it does not disclose any evidence that she took workers' compensation time off in the fall of 1994. Rather, the record indicates that the last time the plaintiff had requested time off under the act was for one day in April, 1994. The plaintiff did not claim, and the commissioner did not find, that Fagan and Holloway discriminated against her for taking workers' compensation time off in April, 1994.

by Fagan and Holloway. The record, however, does not support a finding, implicit or otherwise, that the plaintiff *was*, in fact, exercising rights afforded to her under the act.

A

We first consider the plaintiff's claim that the two weeks that she took off at the beginning of the 1994–95 school year constituted an exercise of rights afforded to her under the act. Despite undisputed testimony that a board employee may request time off under the act, thereby preserving her pool of personal sick days, the plaintiff neither testified nor presented other evidence that she had requested workers' compensation time in August and September of 1994. Rather, records of the plaintiff's attendance for the 1994–95 school year indicate that she had used her personal sick days in August and September, 1994, rather than compensable time off under the act. Furthermore, the plaintiff did not present evidence showing that she had sought workers' compensation for her time off, or that she had contested the board's designation of her time off as sick days, rather than workers' compensation time.

Instead, the only evidence presented relating to the plaintiff's absence at the beginning of the 1994–95 school year was the attendance record previously referenced and a physician's note requesting that she be excused from work until further notice, and her testimony that she had informed Fagan and Holloway that her absence had been due to gastrointestinal bleeding caused by anti-inflammatory medications that she had been taking for a work-related injury. The record does not establish that, in taking time off, the plaintiff exercised a right available to her under the act; rather, the record merely shows that the plaintiff took two weeks of personal sick time because of an ailment associated with a work-related injury. That is simply too slim an

evidentiary reed on which to base a finding that the plaintiff was exercising a right afforded to her under the act.

B

Similarly, the plaintiff's claim, and the commissioner's implicit finding, that she was exercising her rights under the act when she requested additional office space on the first floor, proximal parking and exemption from cafeteria duty, is not supported by sufficient evidence in the record. The act is not a general "reasonable accommodations" piece of legislation. It does not afford an employee the general right to be afforded reasonable accommodations for her physical disabilities. It does, however, give an employee the right to file a claim with the commissioner pursuant to § 31-313; see footnote 3 of this opinion; requesting transfer to suitable work during her period of medical treatment or rehabilitation or because of physical incapacity.

It is undisputed, however, that the plaintiff did not file a claim with the commissioner pursuant to § 31-313. Moreover, the plaintiff claims before this court that, in requesting additional first floor office space, proximal parking and exemption from cafeteria duty, she was not seeking light duty or suitable work, as provided for pursuant to § 31-313. Instead, she claims that she could perform "her regular job as a guidance counselor, but was looking for simple accommodations . . . ." By this, the plaintiff appears to recognize that § 31-313 is inapplicable to the facts of her case. To the extent, therefore, that the commissioner relied on § 31-313 to find, either that the plaintiff had exercised rights afforded to her under the act when she requested accommodations, or that the subsequent denial by Fagan and Holloway of those requests constituted a violation of § 31-313, those findings are neither based

on the plaintiff's claims nor supported by the evidence. We conclude, therefore, that they are clearly erroneous.

Furthermore, the plaintiff failed to explain, and the commissioner did not determine, how the request for first floor office space, proximal parking and exemption from cafeteria duty constituted an exercise of any other provision of the act. Instead, the plaintiff appears to claim, and the commissioner appears to have found, that because she had notes, issued in 1991, from her physicians indicating that she should be allowed to use the elevator and limit stair climbing at Fox Elementary School, her request for first floor office space, proximal parking and exemption from cafeteria duty at the middle school in September, 1994, was an exercise of rights afforded to her under the act.[8] We disagree.

No provision of the act affords an employee the right to have specific office space, proximal parking or exemption from work tasks. Whether the plaintiff had physician-ordered restrictions does not affect this conclusion. Such restrictions would arguably be appropriate evidence to support a claim that an employer improperly denied a transfer to light duty or other suitable work under § 31-313, but in the absence of a related showing that the plaintiff sought a transfer through the procedures afforded to her under § 31-313, evidence of restrictions, in and of themselves, does not prove, for the purposes of § 31-290a, that the plaintiff exercised any rights afforded to her under the act. In other words, an employee's submission of desired work restrictions

---

[8] We note that, in addition to failing to prove that Fagan and Holloway knew of the 1991 notes, and in addition to her testimony that, in her opinion, Fagan and Holloway could not have known about her claims and restrictions because they asked her why she was limping, the plaintiff testified that the middle school did not have an elevator. It would appear, therefore, that even if the plaintiff had shown that Fagan and Holloway knew of the 1991 notes and their restrictions, the requirement that she be allowed to use the elevator would have had no direct impact on her employment conditions at the middle school, which, undisputedly, did not have an elevator.

to her employer does not, in and of itself, constitute the exercise of a right afforded to her under the act.

The plaintiff claimed that she "was looking for simple accommodations . . . ." That is undoubtedly true; however, in the absence of an invocation of the provisions of § 31-313, which the plaintiff failed to do, the plaintiff does not point to any provision in the act giving an employee the right to physical accommodations or to exemption from job tasks. To the extent, therefore, that the commissioner relied on the plaintiff's request for accommodations as proof that she had exercised a right afforded to her under the act, we conclude that, as a matter of law, that reliance was improper.

As a related matter, to the extent that the commissioner appears to have found that the plaintiff's requests for transfers to available positions at other schools necessarily invoked § 31-313, we note that the plaintiff's requests for transfers took place *after* she already had requested and received the unpaid leave of absence on October 23, 1994. In other words, the plaintiff's claim was that she had been discriminated against by Fagan and Holloway, and that the discrimination forced her to take a leave of absence. If the plaintiff claimed that she was discriminated against for seeking transfers to other schools, that discrimination could not have been a factor in her decision to apply for a leave of absence. We conclude, therefore, that, to the extent that the commissioner seems to have considered the plaintiff's requests for transfer to be requests for transfer pursuant to § 31-313, the fact that the plaintiff made these requests *after* she already had applied for a leave of absence renders her transfer requests irrelevant to the question presented by her claim, namely, whether she had been forced by illegal discrimination to apply for an unpaid leave of absence.[9]

---

[9] The commissioner also found that the plaintiff had been denied transfers to other schools in the spring of 1994. The commissioner did not, however, indicate that he found the plaintiff's transfer requests to constitute an exer-

In sum, we conclude that the record is insufficient to support the commissioner's implicit finding that the plaintiff exercised rights under the act when she took two weeks off at the beginning of the 1994–95 school year, and when she requested specific office and parking spaces and exemption from cafeteria duty on account of her work-related injury. Accordingly, we conclude that the plaintiff failed to establish the initial step of the *Ford* burden shifting analysis, namely, that she exercised rights afforded to her under the act. Such a failure, as a matter of law, precludes any finding that the plaintiff suffered discrimination because she exercised her rights. Accordingly, the commissioner's decision to the contrary was clearly erroneous.

### C

Even if we were to assume, arguendo, that the plaintiff presented sufficient evidence to support a finding that she had exercised any rights afforded to her under the act, the plaintiff was further required, in order to establish her prima facie case, to present evidence showing that the discrimination she suffered was intentional and stemmed from the exercise of her rights. The defendant claims on appeal that the record does not support the commissioner's implicit finding that Fagan and Holloway even knew or thought that the plaintiff was exercising rights afforded to her under the act, let alone intended to discriminate against her for exercising those rights. We agree.

cise of rights afforded to her under § 31-313 or any other provision of the act. The plaintiff, furthermore, never claimed that her transfer requests, either in the spring of 1994, *or* the spring of 1995, constituted an exercise of a right afforded to her under the act. Nor did she claim, or present any evidence, that Fagan and Holloway knew of her transfer requests or had any input or involvement in their denial. To the extent, therefore, that the commissioner found that the plaintiff's transfer requests constituted an exercise of rights afforded to her under the act, and that Fagan and Holloway were involved in the denial of those requests, those findings are not based on evidence in the record and are, therefore, clearly erroneous.

As we already have stated, in order to establish a prima facie case of discrimination under § 31-290a, a "plaintiff must show that she was exercising a right afforded her under the act and that the defendant discriminated against her for exercising that right." *Diaz* v. *Housing Authority*, supra, 258 Conn. 731. In other words, the plaintiff must show a causal connection between exercising her rights under the act and the alleged discrimination she suffered. Implicit in this requirement is a showing that the defendant knew or was otherwise aware that the plaintiff had exercised her rights under the act. See *Cifra* v. *General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (to establish prima facie case of discrimination, "the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected [activity] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action" [internal quotation marks omitted]).

The plaintiff claims that Fagan and Holloway knew that she had work-related injuries and work restrictions, and there is evidence in the record that she told them, upon her return to work in September, 1994, that she was limping and had been absent due to work-related injuries. The plaintiff, however, also testified that it was her impression that Fagan and Holloway had not known of her 1985, 1988 and 1990 workers' compensation claims, because they had asked her why she was limping. There is no evidence in the record to indicate that, upon informing Fagan and Holloway of her work-related injuries, the plaintiff also informed them of her past workers' compensation claims. In addition, Fagan and Holloway provided undisputed testi-

mony that they had never met the plaintiff prior to the beginning of the 1994–95 school year, nor had they viewed her personnel files or consulted her former supervisors. Neither of them had worked at the schools where the plaintiff had been injured, or knew that she had been subject to physician-ordered restrictions in the spring of 1991.[10] Furthermore, although there was testimony that, when an employee seeks to take time off for work-related injuries, she forwards a request form for that purpose through the principal or vice principal, the undisputed documentary evidence is that, when the plaintiff took time off in early September, 1994, it was for personal sick days, not workers' compensation time. Thus, the only reasonable inference is that, whatever form the plaintiff submitted at that time, it did not give Fagan or Holloway notice that she was taking time off under the act.

---

[10] To the extent that the plaintiff claimed, and the commissioner found, that the plaintiff was subject to work restrictions in September, 1994, and setting aside for the moment the fact that having work restrictions, as we already have stated, does not, in and of itself, constitute the exercise of rights afforded to her under the act, there is no evidence in the record that the plaintiff had any work restrictions other than the two letters from 1991, which pertained to working conditions at Fox Elementary School, not the middle school, and required temporary use of an elevator, which, it is undisputed, the middle school did not have. It is also undisputed that, on December 2, 1994, the plaintiff submitted to Fagan and Holloway work restrictions pertaining to conditions at the middle school. To the extent, however, that the commissioner found that submission of the December 2, 1994 restrictions demonstrated knowledge on the part of Fagan and Holloway that the plaintiff had exercised rights afforded to her under the act, which, in turn, implied a discriminatory motive to their actions, such a finding is clearly erroneous. It is undisputed that the plaintiff requested her leave of absence, allegedly due to the discrimination she had suffered, on October 23, 1994, and that Fagan approved the request on December 1, 1994. Because it was the plaintiff's claim that it was the discrimination, on the part of Fagan and Holloway, that forced her to request a leave of absence, the plaintiff could not rely on the December 2, 1994 restrictions to demonstrate knowledge that she had exercised rights afforded to her under the act, because both the knowledge and the discrimination must be proven to have occurred *before* she applied for the leave of absence on October 23, 1994.

We, therefore, conclude that there is insufficient evidence in the record to support a finding by the commissioner, implicit or otherwise, that Fagan and Holloway had known, prior to October 23, 1994, the date on which the plaintiff applied for her leave of absence, that she had ever exercised any rights under the act. Knowledge of a work-related injury, without more, is not, as a matter of law, knowledge that a claim was filed for the injury or that any other right afforded by the act had been exercised. See *Knoblaugh* v. *Marshall*, 64 Conn. App. 32, 38–39, 779 A.2d 218, cert. denied, 258 Conn. 916, 782 A.2d 1243 (2001). As we already have stated, the ultimate burden of proving discrimination lies, at all times, with the plaintiff. To the extent that the commissioner found that the plaintiff had proven the necessary elements of her case, namely, that she had exercised rights under the act and that Fagan and Holloway knew that she had exercised those rights and discriminated against her based on that knowledge, we conclude that there was insufficient evidence in the record to support any such finding, and that, therefore, the commissioner's decision to the contrary is clearly erroneous.

The decision of the commissioner is reversed and the case is remanded with direction to dismiss the plaintiff's complaint.

In this opinion the other justices concurred.