ANGEL L. VALDES *v.* YANKEE CASTING
COMPANY, INC.
(AC 26486)

Bishop, McLachlan and Gruendel, Js.

Argued January 4—officially released March 7, 2006

*Donald G. Leis, Jr.*, for the appellant (defendant).

*Ralph A. Russo*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Yankee Casting Company, Inc., appeals from the findings and award of the workers' compensation commissioner (commissioner) rendered in favor of the plaintiff, Angel L. Valdes, on his discriminatory discharge claim. On appeal, the defendant claims that the commissioner (1) improperly concluded that the plaintiff established a prima facie case pursuant to General Statutes § 31-290a and (2) applied the incorrect evidentiary standard by failing to apply the correct burden shifting analysis to the plaintiff's assertion of discriminatory discharge. Additionally, the defendant makes the allied claim that the commissioner's findings and award cannot stand because the com-

missioner failed, in his findings and award, to set forth the conclusion that the plaintiff's discharge was more likely motivated by discriminatory reasons than nondiscriminatory reasons. We affirm the commissioner's decision.

The plaintiff filed his claim with the workers' compensation commission, alleging that the defendant had discriminated against him in violation of § 31-290a (a)[1] because he exercised his rights afforded to him under the workers' compensation laws. On April 1, 2005, the commissioner made the following findings of fact that are relevant to the defendant's appeal. The plaintiff began working for the defendant on or about March 20, 1990. Like 90 percent of the defendant's employees, the plaintiff is unable to speak or read English. When he was hired, the plaintiff was required to sign several documents, including one document specifying the defendant's policy regarding absences from work. The defendant's policy required employees to call in by 8 a.m. if they were unable to attend work. There is no Spanish version of the employee handbook. Roberto Sanchez, who speaks both English and Spanish, was sometimes utilized as an interpreter by the defendant, but was never asked to translate the policy to the plaintiff.

On March 6, 2001, the plaintiff sustained a compensable injury to his left knee, which rendered him totally disabled for approximately thirteen weeks. He underwent surgery in May, 2001, and was released to return to work on June 13, 2001, at which time he returned to his previous job with the defendant. On days when the plaintiff missed work, it was due to pain and difficul-

---

[1] General Statutes § 31-290a (a) provides in relevant part: "No employer . . . shall . . . in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

ties with his knee. The plaintiff was taking medication that caused him to become drowsy and to oversleep, which sometimes prevented him from notifying the defendant of his absence by 8 a.m.

On September 10, 2001, the plaintiff called the defendant and told the office manager that he would be unable to work that day. On September 11, 2001, the plaintiff had tremendous pain in his knee and missed work. On September 12, 2001, the plaintiff continued to have pain in his knee and sought treatment at the Bay State Medical Center emergency room in Springfield, Massachusetts. Prior to going to the hospital on that day, the plaintiff asked Sanchez to inform Brian Vecchiarelli, the defendant's vice president, that he would not be at work, as he was seeking medical treatment for his knee. Sanchez informed Vecchiarelli that the plaintiff went to the hospital to seek medical treatment for his knee. The emergency room physician gave the plaintiff a report stating that the plaintiff would be unable to work on September 12 and 13, 2001. When he arrived at work on September 14, 2001, the plaintiff was met by Vecchiarelli. Sanchez was also present at that meeting to act as a translator. At the meeting, the plaintiff attempted to give Vecchiarelli the medical record from the emergency room, which stated that due to ongoing pain in his knee, the plaintiff was disabled from work on September 12 and 13, 2001. Vecchiarelli refused to accept, consider or review the medical record. Vecchiarelli told the plaintiff that he was tired of the plaintiff's absences and his problems with his knee and terminated the plaintiff's employment.

Throughout the plaintiff's employment with the defendant, his yearly performance evaluations contained comments on his superior work performance. From the time he returned to work in June, 2001, the plaintiff missed fifteen days of work. Vecchiarelli testified that he gave his employees written warnings when-

ever they missed a day. The plaintiff did not receive written warnings for any of the fifteen days that he missed after June, 2001. During the eleven years that he was employed by the defendant, the plaintiff was issued only one written warning, which was for failure to work on a Saturday, despite the fact that he was only obligated to work Monday through Friday. Vecchiarelli testified that there had not been any other employees who had missed three days of work and not been discharged. Two former employees of the defendant testified, however, that they did not receive written warnings when they violated the defendant's call-in policy. Finding their testimony, as well as that of the plaintiff, to be credible and persuasive, and the testimony of Vecchiarelli not credible or persuasive, the commissioner concluded that the plaintiff was treated differently from other employees, that Vecchiarelli was frustrated with the plaintiff's absences from work related to his knee problem and had maliciously discharged the plaintiff as a result of his workers' compensation claim, in violation of § 31-290a (a). On the basis of those findings, the commissioner awarded the plaintiff lost wages in the amount of $58,856.38, counsel fees of $6749.50 and costs of $1403.25. This appeal followed.

We begin our discussion of the issues on appeal by articulating the appropriate standard of review. In assessing a workers' compensation claim, "[t]he commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 270 Conn. 751, 766, 855 A.2d 196 (2004). Because of the fact bound nature of determinations regarding what actions, as a matter of law, may constitute employment discrimination, the commis-

sioner's findings of fact and conclusions of law are reviewed under the clearly erroneous standard. Id., 767. "Under such a standard, [a] finding . . . is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. "This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 457, 889 A.2d 850 (2006).

With that standard of review in mind, we turn to the defendant's claim that the commissioner's conclusion that the defendant discriminated against the plaintiff in retaliation for his exercise of rights afforded to him under the Workers' Compensation Act, General Statutes § 31-275 et seq., was clearly erroneous.

The defendant first claims that the commissioner improperly found that the plaintiff established a prima facie case pursuant to § 31-290a (a). Specifically, the defendant claims that the termination of the plaintiff's employment could not have been based on the plaintiff's knee injury because the defendant did not know that the plaintiff had been absent from work due to problems with his knee. We are not persuaded.

The commissioner found, and the record supports, that the plaintiff told Sanchez that he was not going to be at work because he was seeking medical treatment for his knee and that Sanchez relayed that message to Vecchiarelli. In terminating the plaintiff's employment, Vecchiarelli stated that he was tired of the plaintiff's

absences and *problems with his knee.* As noted, it is not the role of this court to retry the facts of the case. Although the defendant argues that it did not know that the plaintiff's absences were due to his knee injury and, therefore, that his discharge could not have been retaliatory, we conclude that the commissioner's finding was adequately supported by the record.

The defendant next claims that the commissioner failed to apply the appropriate burden shifting analysis as set forth by our Supreme Court in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 578 A.2d 1054 (1990). We understand that claim to have two parts: The defendant claims that the commissioner failed to recite the *Ford* burden shifting analysis in his findings and award, and that because the commissioner required the defendant to start the presentation of its evidence before the plaintiff rested his case, the commissioner could not have applied the *Ford* analysis properly.[2] We disagree.

The necessary contours of a commissioner's finding and award are set forth in § 31-301-3 of the Regulations of Connecticut State Agencies. That regulation pro-

---

[2] The *Ford* burden shifting analysis provides: "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* supra, 216 Conn. 53–54.

vides: "The finding of the commissioner should contain only the ultimate relevant and material facts essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties. It should not contain excerpts from evidence or merely evidential facts, nor the reasons for his conclusions. The opinions, beliefs, reasons and argument of the commissioner should be expressed in the memorandum of decision, if any be filed, so far as they may be helpful in the decision of the case." "[T]he commissioner is not required to explain . . . how he has arrived at a final decision after culling through the evidence." (Internal quotation marks omitted.) *Cable* v. *BIC Corp.*, 270 Conn. 433, 440–41, 854 A.2d 1057 (2004). In the present case, it is evident that the commissioner's findings and award included an adequate recitation of the relevant and material facts he found. The commissioner made sixty-seven factual findings before concluding that the plaintiff had proved, by a preponderance of the evidence, a prima facie case of discrimination in violation of § 31-290a and that the defendant failed to rebut the plaintiff's claim by establishing a legitimate, nondiscriminatory reason for discharging the plaintiff. It is equally evident from the specificity of the commissioner's conclusions that he appropriately applied the *Ford* burden shifting analysis.

The defendant finally claims that the plaintiff failed to prove that his discharge was more likely motivated by discriminatory reasons than nondiscriminatory reasons. Because the commissioner correctly concluded that the plaintiff had established a prima facie case of discrimination and the defendant, in response, did not meet its burden of demonstrating a nondiscriminatory reason for the plaintiff's discharge, the commissioner did not have to reach the question of whether the plaintiff had responded adequately to the defendant's rebut-

tal. See footnote 2. Accordingly, the defendant's claim fails.

The decision of the workers' compensation commissioner is affirmed.

In this opinion the other judges concurred.