******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRISCILLA DICKMAN *v.* UNIVERSITY OF
CONNECTICUT HEALTH CENTER
(AC 37251)

DiPentima, C. J., and Gruendel and Sheldon, Js.

*Argued October 16, 2015—officially released January 19, 2016*

(Appeal from the Workers' Compensation
Commissioner for the first district.)

*Priscilla Dickman*, self-represented, the appellant
(plaintiff).

*Lawrence G. Widem*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schultz*, assistant attorney general,
for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Priscilla Dickman, appeals from the decision of the Workers' Compensation Commissioner for the first district (commissioner) dismissing her General Statutes § 31-290a[1] discriminatory discharge claim against the defendant, the University of Connecticut Health Center. On appeal, the self-represented plaintiff[2] challenges the commissioner's findings and conclusions. The defendant responds that the plaintiff has failed to provide any grounds for reversing the commissioner's dismissal, and that the record supports the commissioner's dismissal.[3] We agree with the defendant, and, accordingly, affirm the decision of the commissioner.

The following procedural history is relevant to this appeal. The plaintiff filed this discriminatory discharge claim in January, 2012, pursuant to § 31-290a (b) (2), alleging that the defendant constructively discharged her because she exercised rights afforded to her under the Workers' Compensation Act, General Statutes § 31-275 et seq. Specifically, the plaintiff claimed that because the defendant failed to accommodate her physical impairments and because it initiated criminal and civil ethics investigations with the purpose to harass her, the defendant created a hostile work environment, thereby forcing her to retire. The plaintiff sought, inter alia, a finding that the defendant, by its alleged conduct, violated § 31-290a. The commissioner held seven formal hearings between 2012 and 2014 in which testimony was received from nine witnesses, deposition testimony was received from one additional witness, and more than 100 exhibits were admitted into evidence. The commissioner found in favor of the defendant and dismissed the plaintiff's discriminatory discharge claim. This appeal followed.

We set forth the relevant facts found by the commissioner. The defendant employed the plaintiff, a medical technologist 2, for approximately twenty-eight years. Early in her career, in 1979, the plaintiff sustained "a compensable back injury/fibromyalgia . . . ." This injury arose out of and in the course of her employment with the defendant.

Starting in the early 2000s, the plaintiff's back pain increased. Because of her worsening condition, the plaintiff, in 2001, requested ergonomic changes to her work area. Her treating physician, in 2003, ordered restrictions on her duties, particularly limiting the number of days that the plaintiff could work each week and the amount of time she could spend each day in her work area. The defendant performed three ergonomic studies of the plaintiff's work area between 2001 and 2004 to address and accommodate her restrictions. Ultimately, the plaintiff retired in 2005 after her "nonservice disability retirement application" was approved.

At some point prior to 2004, the plaintiff's supervisor received complaints that the plaintiff was receiving non-business related telephone calls at work and was absent from her work area when she should have been working. Beginning in 2004, the plaintiff was the subject of criminal and civil ethics investigations. E-mails and other documents found in the plaintiff's work computer had precipitated the investigations. A number of people employed by the defendant in various capacities, as well as an inspector from the Office of the Chief State's Attorney and a legal investigator from the Office of State Ethics, were involved in the investigations. As a result of the criminal investigation, the plaintiff was charged with and subsequently convicted of four counts of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1). *State* v. *Dickman*, 146 Conn. App. 17, 19, 75 A.3d 780 (conviction affirmed), cert. denied, 310 Conn. 948, 80 A.3d 905 (2013).[4] With respect to the civil ethics investigation, the state ethics commission found that the plaintiff had violated General Statutes § 1-84 (c) by "conducting various personal business for financial gain on state time utilizing state resources." The latter decision was affirmed in *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, 140 Conn. App. 754, 60 A.3d 297, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

Relying on his factual findings, the commissioner concluded that "based upon the totality of the evidence, including actions, statements and e-mails made and authored by various individuals in supervisory capacities with the [defendant] relating to the [plaintiff's] restrictions as well as the timing of these investigations, it can be reasonably inferred that the [plaintiff] has established a prima [facie] case that the [defendant] created a hostile work environment resulting in a constructive discharge. . . . Pursuant to our case law, when a [plaintiff] establishes a prima [facie] case, the burden shifts to the [defendant] to rebut this presumption of discrimination by producing evidence of legitimate nondiscriminatory reasons for its action. . . . I find and conclude that based upon the totality of the evidence, the [defendant] has successfully met its burden." Moreover, the commissioner concluded that "[b]ased upon the totality of the evidence . . . the [plaintiff] has not sustained her burden of proof that the [defendant] created a hostile work environment causing her to be constructively discharged compelling her to seek a disability retirement. As such, the [plaintiff's] § 31-290a claim is dismissed."

On appeal, the plaintiff challenges the commissioner's factual findings, contending that they were clearly erroneous. Specifically, she claims that the commissioner should have found that the defendant created a hostile work environment by not making reasonable accommodations for her and by pursuing criminal and

civil ethics investigations against her. As a result, the plaintiff contends, she was constructively discharged, which compelled her to seek a disability retirement. The defendant counters that "the plaintiff has failed to provide any credible evidence or legal support for a claim that the commissioner's factual findings or legal conclusions were clearly erroneous." We agree with the defendant.[5]

We now set forth the standard of review and applicable law governing the plaintiff's claim. "[B]ecause the commissioner is essentially fulfilling the role of a trial court in adjudicating § 31-290a claims, the commissioner's findings of fact and conclusions of law, like those of a trial court, should be reviewed on appeal under the same standard. . . . [Thus] this standard . . . [is] the clearly erroneous standard." *Mele* v. *Hartford*, 270 Conn. 751, 767, 855 A.2d 196 (2004). "Under such a standard, [a] finding . . . is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

The burden of proof in § 31-290a claims is set forth in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 578 A.2d 1054 (1990), and its progeny. In the burden shifting analysis, the plaintiff, initially, has the "burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . [T]o meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the [factfinder] . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) *Mele* v. *Hartford*, supra, 270 Conn. 768. We bear in mind that "it is the plaintiff's ultimate burden to prove that the defendant intentionally discriminated against her . . . ." (Internal quotation marks omitted.) Id., 768–69.

The commissioner first concluded that the plaintiff established a prima facie case that the defendant had "created a hostile work environment resulting in a constructive discharge." His conclusion rested on the totality of the evidence, namely, the "actions, statements, and e-mails made and authored by various individuals

in supervisory capacities with the [defendant] relating to the [plaintiff's] restrictions as well as the timing of [the] investigations . . . ." Thus, the burden shifted to the defendant to rebut the presumption of discrimination.

The evidence before the commissioner supported his finding that the defendant's actions were nondiscriminatory. First, the current administrative director of the pathology and laboratory medicine and a former director of benefits and payroll testified that they neither harbored animosity toward the plaintiff nor sought to force the plaintiff to leave. Next, an ergonomist employed by the defendant testified that, as a result of ergonomic studies, the defendant attempted to accommodate and make the necessary changes to the plaintiff's work area. The testimony by the defendant's employees undercuts the assertions made by the plaintiff that individuals employed by the defendant "[pressured]" her to leave and did not make reasonable accommodations for her. Finally, the criminal and civil ethics investigators testified that "no individuals associated or affiliated with the [defendant] requested [them] . . . to pursue [their respective investigations]." This testimony was bolstered by the current director of labor relations employed by the defendant, who testified that she did not target the plaintiff for "selective enforcement" of ethics violations and that the defendant itself did not discipline the plaintiff for her actions, i.e., receiving nonbusiness related calls and leaving her work area. The testimony pertaining to the investigations undermines the claim advanced by the plaintiff that the defendant actively pursued these investigations to create a hostile work environment.

Although the commissioner found that the plaintiff was "intelligent, articulate, determined and firmly believes in her position on the issue of wrongful discharge," he expressly found the testimony of four current or former employees as well as two investigators "to be more credible and persuasive [than that of] the testimony of the [plaintiff]." We keep in mind that "[i]t [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Hammond* v. *Bridgeport*, 139 Conn. App. 687, 698, 58 A.3d 259 (2012), cert. denied, 308 Conn. 916, 62 A.3d 527 (2013). Because "[t]his court does not retry the case or evaluate the credibility of the witnesses . . . we must defer to the [trier of fact's] assessment . . . ." (Internal quotation marks omitted.) *Valdes* v. *Yankee Casting Co.*, 94 Conn. App. 140, 145, 891 A.2d 994 (2006).

Once the defendant satisfied its burden of production by rebutting the presumption raised by the prima facie case, the burden of persuasion shifted to the plaintiff to show that she was the victim of discrimination. The commissioner concluded that the plaintiff did not meet

her burden of demonstrating that the defendant created a hostile work environment resulting in her constructive discharge.

"A workers' compensation commissioner has the power to determine the facts and we cannot disturb them when reasonably found. . . . Conclusions drawn from those facts also cannot be disturbed unless they result from an incorrect application of the law to those facts or from an inference illegally or unreasonably drawn from them." (Citation omitted.) *Chernovitz* v. *Preston Trucking Co.*, 52 Conn. App. 570, 573, 729 A.2d 222 (1999). Under the standard of review established in *Mele* v. *Hartford*, supra, 270 Conn. 767, we determine that the commissioner's decision was not clearly erroneous.

The decision of the Workers' Compensation Commissioner is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 31-290a provides: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

[2] "This court . . . has stated that it has always been solicitous of the rights of [self-represented] litigants and, like the trial court, will endeavor to see that such a litigant shall have the opportunity to have [her] case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party. . . . Although we will not entirely disregard our rules of practice, we do give great latitude to [self-represented] litigants in order that justice may both be done and be seen to be done. . . . For justice to be done, however, any latitude given to [self-represented] litigants cannot interfere with the rights of other parties, nor can we disregard completely our rules of practice." (Internal quotation marks omitted.) *Cragg* v. *Administrator, Unemployment Compensation Act*, 160 Conn. App. 430, 443 n.9, A.3d (2015).

[3] We note that the defendant presented two alternative bases for affirming the judgment of the court. First, the defendant argued that the plaintiff's discriminatory discharge claim was barred by the statute of limitations in General Statutes § 52-577, which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Second, the defendant argued that the plaintiff is

collaterally estopped because her claim was disposed by a summary judgment granted in favor of the defendant by a federal District Court. *Dickman* v. *University of Connecticut Health Center*, United States District Court, Docket No. 3:08-CV-0588 (VLB) (D. Conn. August 29, 2013). Because we affirm the decision of the commissioner, we do not address these bases.

[4] We also note that during the course of this criminal investigation, an inspector for the Office of the Chief State's Attorney discovered that the plaintiff was being investigated for an unrelated fraudulent insurance claim. *State* v. *Dickman*, 119 Conn. App. 581, 585, 989 A.2d 613, cert. denied, 295 Conn. 923, 991 A.2d 569 (2010). The plaintiff was convicted of violating General Statutes § 53a-140 (a). This court affirmed the conviction; id., 599; subsequently, this court affirmed the judgment of the habeas court denying the plaintiff's petition for a writ of habeas. *Dickman* v. *Commissioner of Correction*, 143 Conn. App. 780, 70 A.3d 1147 (2013).

[5] The defendant argues that the plaintiff failed to exhaust her administrative remedies because she did not pursue her rights under General Statutes § 31-313. In support of its argument the defendant notes that the commissioner concluded that the plaintiff, between 2001 and 2005, "did not elect to pursue her rights pursuant to [§ 31-313] to compel the [defendant] to accommodate her restrictions." We need not determine whether this finding implicates subject matter jurisdiction because we conclude that the commissioner properly dismissed the plaintiff's § 31-290a claim on the facts he found.