******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## MOUY TAING *v.* CAMRAC, LLC
## (AC 40941)

Sheldon, Bright and Harper, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant company for, inter alia, the allegedly wrongful termination of her employment on the basis of pregnancy discrimination. The plaintiff, who worked for the defendant as an account executive in car sales, had received numerous performance evaluations documenting that she was habitually tardy for her shifts. In July, 2014, the plaintiff received a written warning, which stated that her tardiness was unacceptable and that, if her attendance record did not improve, she would be subject to further discipline up to and including termination. In December, 2014, shortly after notifying the defendant that she was pregnant, the plaintiff received a final written warning, noting that she continued to be habitually tardy despite adjustments made to her work schedule and that her position would be terminated if she was tardy again. On December 24, 2014, the plaintiff was sent home after she arrived late to work, and her employment was subsequently terminated. The trial court granted the defendant's motion for summary judgment and rendered judgment thereon in favor of the defendant, from which the plaintiff appealed to this court. *Held* that the plaintiff could not prevail on her claim that a genuine issue of material fact existed as to whether the defendant's proffered reason for her termination was pretextual, as the plaintiff failed to produce any evidence to suggest that the proffered reason had not been the only reason for the defendant's employment decision and that her pregnancy was at least one of the motivating factors behind her termination: although the plaintiff claimed that several of her colleagues who were not pregnant were similarly situated because they were also late for work on December 24, 2014, and were not sent home or otherwise disciplined for their tardiness, the plaintiff did not provide any evidence to demonstrate that any of her fellow employees had the same extensive history of chronic tardiness or had received a written warning stating that he or she would be terminated if he or she was late, and, thus, the plaintiff could not demonstrate that any other employee was similarly situated to her with respect to his or her attendance records; moreover, the defendant provided a plethora of evidence documenting the plaintiff's habitual tardiness, it was evident from both her performance evaluations and the July, 2014 written warning that the plaintiff's habitual tardiness had been a notable issue that long preceded her pregnancy, and the defendant made multiple attempts to assist the plaintiff so that she would arrive to work on time.

Argued November 28, 2018—officially released April 2, 2019

*Procedural History*

Action to recover damages for, inter alia, alleged pregnancy discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Matthew Muttart*, with whom, on the brief, was *James V. Sabatini*, for the appellant (plaintiff).

*Tanya A. Bovée*, with whom, on the brief, was *Justin E. Theriault*, for the appellee (defendant).

*Opinion*

HARPER, J. This appeal arises from a pregnancy discrimination action brought by the plaintiff, Mouy Taing, under the Connecticut Fair Employment Practices Act[1] against the defendant, CAMRAC, LLC, after she was terminated from her employment with the defendant.[2] On appeal, the plaintiff argues that the trial court improperly rendered summary judgment in favor of the defendant. Specifically, she claims that there was a genuine issue of material fact as to whether the defendant's proffered reason for her termination was pretextual. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The plaintiff was hired by the defendant in April, 2013, for a position that entailed renting cars to customers. Despite issues with tardiness, the plaintiff was promoted in January, 2014, to the position of account executive, in which she sold cars to customers. Throughout the plaintiff's employment with the defendant, the plaintiff received numerous performance evaluations documenting that she was habitually tardy for her shifts. On July 18, 2014, the plaintiff received a written warning for arriving late to work on multiple occasions without notifying management, in violation of the defendant's attendance and punctuality policy.[3] The warning informed the plaintiff that her tardiness was unacceptable and that, if her attendance record did not improve, she would be subject to further discipline up to and including termination. Matthew Fisher, the plaintiff's manager, and Kevin Hill, a supervisor, met with the plaintiff to assist her in planning out her daily schedule so that she could avoid being tardy. Moreover, the defendant twice permitted the plaintiff to alter her work schedule to better accommodate her child care needs.[4]

On or about December 16, 2014, the plaintiff notified the defendant's human resources department that she was pregnant. The plaintiff also notified her supervisors, Hill and Fisher, of her pregnancy. On December 19, 2014, the plaintiff received a final written warning, noting that she continued to be habitually tardy despite adjustments made to her work schedule.[5] Additionally, the warning stated that her position would be terminated if she was tardy again. On December 22, 2014, however, the plaintiff was again late. On December 24, 2014, Fisher sent the plaintiff home after she arrived late to work. On December 29, 2014, the next day that the plaintiff was scheduled to work, she was terminated. At that time, Fisher informed the plaintiff that she was being terminated for tardiness.

After obtaining a release of jurisdiction from the Commission on Human Rights and Opportunities,[6] the plaintiff filed a three count complaint against the defendant,

alleging, inter alia, pregnancy discrimination in violation of General Statutes (Rev. to 2013) § 46a-60 (a) (7), now § 46a-60 (b) (7).[7] The defendant subsequently moved for summary judgment on all counts of the plaintiff's complaint. In a memorandum of decision, the court granted the defendant's motion, agreeing with the defendant that the plaintiff had failed to produce any evidence that raises a genuine issue of material fact that the defendant's proffered reason for terminating the plaintiff was pretextual. This appeal followed. Additional facts will be provided as necessary.

We first set forth the relevant standard of review and legal principles that guide our analysis. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 829, 925 A.2d 1030 (2007).

Although the plaintiff's claim is based solely on Connecticut law, "Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws." *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 407, 944 A.2d 925 (2008). "In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60." *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998).

"The legal standards governing discrimination claims involving adverse employment actions are well established. The framework this court employs in assessing disparate treatment discrimination claims under Connecticut law was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny. . . . Under this analysis, the employee must first make a prima facie case of discrimination. . . . In order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. . . . The employer may then rebut the prima

facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. . . . The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Citations omitted; internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 73–74, 111 A.3d 453 (2015). "[T]o defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination . . . ." (Citations omitted; internal quotation marks omitted.) *Govori* v. *Goat Fifty, LLC*, 519 Fed. Appx. 732, 734 (2d Cir. 2013).

"To prove pretext, the plaintiff may show by a preponderance of the evidence that [the defendant's] reason is not worthy of belief or that more likely than not it is not a true reason or the only true reason for [the defendant's] decision to [terminate the plaintiff] . . . ." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 402, 880 A.2d 151 (2005). "Of course, to defeat summary judgment . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." (Internal quotation marks omitted.) *Garcia* v. *Hartford Police Dept.*, 706 F.3d 120, 127 (2d Cir. 2013).

Turning to the present matter, the plaintiff argues that a genuine issue of material fact existed as to whether the defendant's proffered reason for her termination was pretextual because similarly situated individuals who were not pregnant were treated differently than she was. Specifically, the plaintiff argues that several of her colleagues were similarly situated because they were also late for work on the morning of December 24, 2014, but they were not sent home or otherwise disciplined for their tardiness. The plaintiff, however, does not provide any evidence to demonstrate that any of her fellow employees had the same extensive history of chronic tardiness or had received a written warning stating that he or she would be terminated if he or she was late without notifying management. See *Harris* v. *Dept. of Correction*, 154 Conn. App. 425, 432–33, 107 A.3d 454 (2014) (plaintiff failed to proffer evidence of employee's comparable disciplinary history), cert. denied, 315 Conn. 925, 109 A.3d 921 (2015). Thus, even when viewing the evidence in the light most favorable to the plaintiff, she cannot, as a matter of law, demonstrate that any other employee was similarly situated to her with respect to his or her attendance records over an extended period of time.

Furthermore, the defendant provided a plethora of

evidence documenting the plaintiff's habitual tardiness. It is evident from both her performance evaluations and the July 18, 2014 written warning given to her that the plaintiff's habitual tardiness had been a notable issue that long preceded her pregnancy in December, 2014. In particular, the July 18, 2014 written warning made clear that her tardiness was not acceptable and that she would be subject to further disciplinary action, up to and including termination, if she did not improve her attendance. Moreover, it is evident that the defendant made multiple attempts to assist the plaintiff so that she would arrive to work on time. This is reflected in the plaintiff's alternative work schedule and the attempt by Fisher and Hill to help her map out her daily schedule. The plaintiff failed to produce any evidence to suggest that the proffered reason for her termination had not been the only reason for the defendant's employment decision and that her pregnancy was at least one of the motivating factors behind her termination. Accordingly, the trial court properly rendered summary judgment in favor of the defendant.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See General Statutes § 46a-51 et seq.

[2] The plaintiff also alleged in her amended complaint violations of the state wage and hour law under General Statutes §§ 31-68 and 31-72 for the defendant's failure to pay her overtime but later conceded at a hearing on the defendant's motion for summary judgment that her position as a salesperson was exempt from those statutory requirements.

[3] The written warning stated that the plaintiff was late to work on nine occasions in June and July of 2014. On two of those occasions, the plaintiff failed to notify management that she was running late.

[4] The plaintiff often dropped her daughter off at daycare before work.

[5] The final written warning noted that she had been late to work on October 1, 13, 24, 27, 30, November 10, 14, 17, 21, 24, and December 6, 11, 12, 13, 18, 19, 2014. The plaintiff disputed being late on October 1, 13, 24, and 27, 2014. Fisher subsequently conceded that she had not been late on October 1 and 13, 2014.

[6] See General Statutes § 46a-100.

[7] General Statutes (Rev. to 2013) § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (7) [f]or an employer . . . [t]o terminate a woman's employment because of her pregnancy . . . ."

[8] The plaintiff also argues that there is a credibility issue regarding statements made in Fisher's deposition. Principally, the plaintiff points to Fisher's statement that he issued a verbal warning to two of the plaintiff's coworkers, Anastasia Nisyrios and Brianne Donlon, for arriving late to work on December 24, 2014. The plaintiff argues that those verbal warnings should have been recorded in accordance with company policy but were not. As a result, the plaintiff asserts that Fisher must not have actually issued the verbal warnings, and that a jury could reasonably conclude that Fisher was "manufacturing the discipline of other employees in an attempt to conceal his discriminatory treatment of the plaintiff." The plaintiff failed to produce any evidence to support these conclusory statements. In fact, it is well settled that a "plaintiff's opinions and assertions about the motives of the defendants . . . are not sufficient to establish facts as would be admissible in evidence, as required by Practice Book § 17-46." (Internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 97 Conn. App. 527, 540, 906 A.2d 14 (2006).