******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SALVATORE GIBILISCO *v.* TILCON
CONNECTICUT, INC.
(AC 43294)

Alvord, Prescott and Suarez, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for the alleged
wrongful termination of his employment in violation of the statute (§ 31-
290a) prohibiting discrimination against employees exercising their
rights under the Workers' Compensation Act (§ 31-275 et seq.). The
plaintiff had worked for the defendant since 2002, and, every year,
received a seasonal layoff notice with recall. In October, 2016, the plain-
tiff sustained a work injury, received medical treatment, and filed a
workers' compensation claim. Approximately one month after the plain-
tiff filed his claim, he received a seasonal layoff notice without recall,
terminating his employment. The defendant filed a motion for summary
judgment, which the trial court granted, concluding that there was no
genuine issue of material fact as to whether the defendant discriminated
against the plaintiff in violation of § 31-290a. On the plaintiff's appeal
to this court, *held*:

1. The trial court erred in granting the defendant's motion for summary
judgment on the ground that the plaintiff did not meet his initial burden
of establishing a prima facie case of discrimination under the burden
shifting framework set forth in *McDonnell Douglas Corp.* v. *Green* (411
U.S. 792), the plaintiff having presented evidence sufficient to raise a
genuine issue of material fact regarding a causal connection between
the protected activity and the adverse action: the plaintiff presented
evidence that he sustained a work injury, reported his injury to the
defendant, received medical treatment for his injury, filed a workers'
compensation claim arising out of his work injury, and, thereafter,
approximately two weeks before he received his seasonal layoff notice
without recall, the defendant made the decision to terminate his employ-
ment, which showed a sufficiently close temporal connection between
the exercise of his rights protected under the act and the defendant's
adverse action against him; moreover, the plaintiff produced additional
evidence sufficient to raise a disputed issue of fact as to whether the
adverse action took place under circumstances permitting an inference
of discrimination, including that, after he was examined at a medical
treatment center and provided a first work status report that assigned
him light duty work restrictions, the defendant's safety personnel had a
conversation with the plaintiff's treating physician, without the plaintiff's
knowledge, which resulted in a second work status report that elimi-
nated the plaintiff's light duty work restrictions and attempted to mini-
mize the plaintiff's workers' compensation claim, and an employee of
the defendant testified that the plaintiff had personal responsibility in
sustaining his work injuries, despite also acknowledging that the plaintiff
had not violated any company rule or policy when his injuries occurred.

2. The trial court erred in granting the defendant's motion for summary
judgment on the ground that the plaintiff did not meet his ultimate
burden under the *McDonnell Douglas Corp.* framework in proving the
defendant's discriminatory motivation or demonstrating that the defen-
dant's legitimate, nondiscriminatory reason was pretextual; the plaintiff
presented evidence sufficient to raise a genuine issue of material fact
that a discriminatory reason more likely motivated the defendant as well
as evidence that the defendant's proffered explanation was unworthy
of credence, including evidence of his disparate treatment relative to
other coworkers involved in an October, 2016 safety incident in that
only his employment was terminated, that the only other safety incidents
referred to by the defendant were work injuries where it was determined
that no rules or safety policies were violated, and evidence of direct
statements made by representatives of the defendant that the plaintiff
was held personally responsible for his work injuries, which factually
supported his allegation that the defendant had a retaliatory animus
directed against him for his work injuries.

Argued November 19, 2020—officially released April 20, 2021

*Procedural History*

Action to recover damages for the alleged wrongful termination of the plaintiff's employment, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Aurigemma, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Michael J. Reilly*, with whom was *Emanuele R. Cicchiello*, for the appellant (plaintiff).

*Daniel J. Krisch*, with whom, on the brief, were *Carl R. Ficks*, *Jr.*, and *Laura Pascale Zaino*, for the appellee (defendant).

*Opinion*

ALVORD, J. This appeal arises out of an action by the plaintiff, Salvatore Gibilisco, in which he asserts that his former employer, the defendant, Tilcon Connecticut, Inc., wrongfully terminated his employment in violation of General Statutes § 31-290a[1] because he had filed for workers' compensation benefits. On appeal, the plaintiff claims that the trial court erred in rendering summary judgment in favor of the defendant on the grounds that he had failed as a matter of law to raise a genuine issue of material fact with respect to his initial and ultimate burden of proving a discriminatory discharge under the *McDonnell Douglas* burden shifting framework.[2] We conclude that genuine issues of material fact exist that preclude the granting of summary judgment as a matter of law, and, accordingly, we reverse the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. The defendant supplies crushed stone, hot mix asphalt, and ready-mix concrete throughout Connecticut. The plaintiff was employed by the defendant as a "ground man" in the defendant's asphalt division from June 17, 2002, to December 9, 2016, and, at all relevant times, he was assigned to work at the defendant's asphalt plant in Manchester. As a ground man, the plaintiff was responsible for plant and rail yard maintenance, which includes, inter alia, heavy lifting, daily shoveling of sand, stone and wet materials, and greasing and oiling plant equipment.

At all relevant times, the plaintiff was a member of the International Union of Operating Engineers Local 478 (union) and the terms and conditions of the plaintiff's employment were subject to the collective bargaining agreement entered into by the union (collective bargaining agreement). Article 23, section 20 of the collective bargaining agreement that was in effect from April, 2014, to March, 2018, provides for a "seasonal layoff" of employees that is defined as "any layoff that takes place during the period from the day before Thanksgiving to April 30th." Pursuant to the collective bargaining agreement, the defendant typically provides each employee with an annual notice of seasonal layoff that is either with recall or without recall. Unless the defendant provides a union employee within the asphalt division, such as the plaintiff, a notice of seasonal layoff without recall, such employee is recalled the following spring. The collective bargaining agreement provides that except for Article 23, section 20, "there are no recall rights for employees . . . ." The collective bargaining agreement further provides that an employee who does not agree with a notice of seasonal layoff without recall may bring the matter before a four member mediation board for resolution.

The plaintiff received his first seasonal layoff notice on December 6, 2002. He received a seasonal layoff notice with recall every year thereafter until the defendant issued a final seasonal layoff notice without recall on December 9, 2016. Throughout that time, the defendant issued one seasonal layoff in November and the remaining seasonal layoffs in December. The plaintiff was recalled to work each year except for 2017, because he had received a seasonal layoff without recall on December 9, 2016.

When the plaintiff was hired by the defendant in 2002, he received a copy of the "Tilcon Safety Guide and General Company Rules," which specified the defendant's workplace safety policies and procedures. The plaintiff also received training on the safety rules and procedures after he was hired and every year when he returned for his seasonal recall. In the event that an employee is injured at work, the defendant investigates the cause of the injury and identifies actions to prevent the reoccurrence of injury. As part of the investigation, the defendant determines whether any company rules or policies were violated in causing the injury. The defendant makes this determination in reference to its general company rules and its specific safety guide. The defendant maintains an "Employee Counseling Record," which consists of written warnings that the defendant issues for, inter alia, avoidable accidents, safety rule violations, or unsafe conduct. The defendant's human resources policy is that an employee's injury is not held against the employee if the incident does not involve a violation of any company rules or policies.

On August 7, 2013, the plaintiff sustained a work injury to his left shoulder. In a "First Report of Injury," the plaintiff's supervisor, Gino Troiano, stated that the "root cause" of the plaintiff's injury was "dumping [a] wheelbarrow . . . ." The report suggested, as "corrective action" to eliminate the hazard, to "[i]ncrease [the] frequency of dumping to lessen [the] load." The defendant's Safety and Health Manager, Michael Woodin, also prepared a "Recordable Injury & Avoidable Vehicle Accident Report" (recordable injury report),[3] which stated that the "root cause" of the plaintiff's injury was that the "[w]heelbarrow load may have been too heavy . . . [in addition to an] [i]mproper lifting technique." The report suggested, as "corrective action," to stretch, to decrease load capacity and to increase frequency of dumping, to employ proper body mechanics, and to try using the pivoting wheelbarrow handles to see if they improve body mechanics. Woodin determined that the plaintiff had not violated any company rules or safety policies when the injury occurred. The defendant did not issue an "Employee Counseling Record" in connection with the plaintiff's injury. The plaintiff filed a workers' compensation claim arising out of the August 7,

2013 injury and received workers' compensation benefits in connection with his injury. After the 2013 injury, the plaintiff was recalled to work in March, 2014.

On December 9, 2015, the plaintiff sustained a work injury to his right elbow while scraping a dryer inlet chute. In a "First Report of Injury," the plaintiff's immediate supervisor, Michael Satagaj, stated that the "root cause" of the plaintiff's injury was that "[t]he face of the chute developed a worn area that the blade of [a seven foot steel rod] scraper abruptly caught on . . . ." The worn area on the chute liner was a natural condition that develops over time with the running of the machine and requires periodic replacement. The report suggested, as "corrective action" to eliminate the hazard, to "[r]epair the worn chute liner." The defendant determined that the plaintiff had not violated any company rules or safety policies when the injury occurred. The defendant did not prepare a recordable injury report or issue an "Employee Counseling Record" in connection with the plaintiff's injury. The plaintiff did not file a workers' compensation claim in connection with this injury. The plaintiff returned to work the next day and the defendant provided him with light duty work. After the 2015 injury, the plaintiff was recalled to work in March, 2016.

On October 10, 2016, the plaintiff violated a safety rule promulgated by the defendant by "fail[ing] to return [a] machine [guard] to [its] proper place after repairs and running [the asphalt] plant without [the guard] in place." The plaintiff and two other employees of the defendant admitted responsibility for this safety violation. The defendant issued an "Employee Counseling Record" in connection with the plaintiff's safety violation. The October, 2016 employee counseling record was the plaintiff's first written counseling over the course of his employment with the defendant.[4] The plaintiff, as well as the two other employees responsible, received a three day unpaid suspension for the safety violation. The plaintiff signed the October, 2016 employee counseling record without contesting the disciplinary action against him. Although the safety violation was a terminable offense, the plaintiff, as well as the two other employees responsible, continued to work for the defendant after the safety violation and the resulting suspension. Neither of the two other employees responsible for the safety violation had been involved in any work accidents or work injuries in the last two seasons or were considered for layoff without recall at the end of the 2016 season. Both of the two other employees responsible for the safety violation were recalled to work in March, 2017.

On October 25, 2016, the plaintiff sustained a work injury to his right elbow while scraping a dryer inlet chute. In a "First Report of Injury," Satagaj provided neither a "root cause" of the plaintiff's injury nor sug-

gested "corrective action" to eliminate the hazard. Woodin prepared a recordable injury report, which stated that the "root cause" of the plaintiff's injury was that "[u]sing the [scraper] at [the] location is ergonomically challenging . . . [i]t is awkward and lends itself to a measure of reaching and twisting," and "[t]he tool caught [on] a worn liner plate." The report indicated a risk tolerance factor on the basis of the plaintiff's familiarity with the task, stating that "[t]he repetitive task became routine and risk awareness decreased." The report also suggested, as "corrective action," to replace the worn liner of the dryer inlet chute, to commit to more frequent cleaning to alleviate buildup of material in the chute, to install chains to diffuse the aggregate, to change the liner composition, to improve access in the area, and to investigate increasing the size of the vibrator on the chute to improve the flow of material. The defendant determined that the plaintiff had not violated any company rules or safety policies when the injury occurred. The defendant did not issue an "Employee Counseling Record" in connection with the plaintiff's injury. The plaintiff returned to work the same day "without restrictions" and "as tolerated."

After the plaintiff reported his October 25, 2016 work injury, the defendant sent the plaintiff to the Doctors Treatment Center in Plainville (treatment center) for medical treatment. In accordance with company policy, the plaintiff was accompanied to this appointment by one of the defendant's safety personnel, Mike Deluco, for the purpose of helping to "manage the claim" and to prevent it from being a recordable incident.[5] After the plaintiff was examined, the physician provided him with a "Work Status Report" (first work status report) that assigned the plaintiff with light duty work restrictions as follows: "Avoid using R. hand/arm." Deluco subsequently had a conversation with the plaintiff's physician, without the plaintiff's knowledge, which resulted in Deluco procuring a new "Work Status Report" from the physician (second work status report). Woodin testified that the purpose of this conversation with the physician was "to see if we can lift the significant restrictions to potentially avoid a recordable injury." The second work status report released the plaintiff to work "without restrictions."[6] The physician further noted that the plaintiff could return to normal work "[a]s tolerated."

On November 8, 2016, the plaintiff filed a workers' compensation claim arising out of the October 25, 2016 injury and received workers' compensation benefits in connection with his injury. On November 18, 2016, the plaintiff was seen at the treatment center for a follow-up examination for his injury and was released to work with a light duty work restriction on lifting more than fifteen pounds until his next follow-up examination on November 28, 2016. As of the date of the submission of the parties' memoranda on the defendant's motion

for summary judgment, the plaintiff was still receiving treatment and workers' compensation benefits for his October 25, 2016 injury.

On December 9, 2016, approximately one month after the plaintiff filed his workers' compensation claim, the plaintiff received a seasonal layoff notice without recall. Approximately two weeks before the plaintiff received that layoff notice without recall, the defendant made the decision to terminate the plaintiff's employment. Pursuant to the collective bargaining agreement, the plaintiff challenged his seasonal layoff notice without recall, and a hearing was held before a four member mediation board on January 24, 2017. At the hearing, the defendant presented evidence that the seasonal layoff without recall that was issued to the plaintiff on December 9, 2016, was based on several safety incidents that demonstrated the plaintiff's failure to adhere to the defendant's safety policies. The plaintiff's challenge of his notice of layoff without recall was ultimately unsuccessful before the board.

On January 23, 2018, the plaintiff filed this action against the defendant alleging wrongful termination in violation of § 31-290a, which prohibits retaliation or discrimination against an employee for exercising his rights under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. On April 1, 2019, the defendant moved for summary judgment on the grounds that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. In its memorandum of law in support of its motion for summary judgment, the defendant presented three arguments. First, the defendant argued that the plaintiff failed to establish a prima facie claim for discrimination under § 31-290a because the plaintiff "fail[ed] to establish any evidence of a causal connection between his exercise of any right under the act and being issued a seasonal layoff without recall." Second, the defendant argued that it fulfilled its burden of showing a legitimate, nondiscriminatory reason for issuing the plaintiff a seasonal layoff without recall on the basis of the plaintiff's "increasing instances of safety incidents."[7] Third, the defendant argued that the plaintiff failed to satisfy his ultimate burden of establishing that the defendant's legitimate, nondiscriminatory reason was pretextual.[8]

On June 3, 2019, the plaintiff filed an objection to the defendant's motion for summary judgment and a memorandum of law in support of his objection. In his memorandum, the plaintiff presented two arguments. First, the plaintiff argued that "[t]he close temporal proximity between the plaintiff reporting his [October 25, 2016] injury to the defendant [and] the termination of the plaintiff is plainly enough to suggest an inference of discrimination, thereby satisfying the plaintiff's de minimis prima facie burden."[9] Second, the plaintiff

argued that he can overcome the defendant's proffered reason for his termination and carry his ultimate burden of proof for his claim of wrongful termination under § 31-290a. In support of his contention, the plaintiff presented the following evidence: "(1) The defendant contends that it terminated the plaintiff for his 'safety incidents' when he was injured in 2013, 2015, and 2016, when in fact, no such safety violations occurred, (2) the defendant's blatantly disparate treatment of the plaintiff and his other coworkers in Manchester who were involved in the [October 10, 2016] machine guard incident, [and] (3) the defendant's efforts to unilaterally override the plaintiff's light duty work restrictions . . . ."[10] On June 7, 2019, the defendant filed a reply to the plaintiff's objection to its motion for summary judgment, in which it reiterated its arguments that the plaintiff failed to meet his prima facie burden of establishing an inference of discrimination and his ultimate burden of demonstrating that the defendant's proffered legitimate, nondiscriminatory reason was pretextual.

On July 31, 2019, the trial court, *Aurigemma, J.*, issued a memorandum of decision granting the defendant's motion for summary judgment. In resolving the plaintiff's disparate treatment claim, the court applied the *McDonnell Douglas* framework of allocating the burden of proof.[11] First, the court determined that "[t]he plaintiff has failed to establish a prima facie case of discrimination." Second, the court determined that, "even if the evidence is taken to establish such a prima facie case, [the defendant] has articulated a legitimate, nondiscriminatory reason for its actions toward the plaintiff . . . ." Finally, the court determined that "[t]he plaintiff has not pointed to any evidence . . . that would suggest that [the defendant's] reasons for issuing the plaintiff a 'no-recall' layoff were false or that [the defendant] intended to discriminate against the plaintiff in any way." Accordingly, the court concluded that there was no genuine issue of material fact as to whether the defendant discriminated against the plaintiff in violation of § 31-290a and rendered summary judgment in favor of the defendant with respect to the plaintiff's claim. This appeal followed.[12]

We first set forth the relevant standards that govern our review of a court's decision to grant a defendant's motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter

of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.). *Barbee* v. *Sysco Connecticut, LLC*, 156 Conn. App. 813, 817–18, 114 A.3d 944 (2015).

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . .

"An important exception exists, however, to the general rule that a party opposing summary judgment must provide evidentiary support for its opposition . . . . On a motion by [the] defendant for summary judgment, the burden is on [the] defendant to negate each claim as framed by the complaint . . . . It necessarily follows that it is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial. . . . Accordingly, [w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Internal quotation marks omitted.) Id., 818–19.

On appeal, the plaintiff claims that the court improperly granted the defendant's motion for summary judgment because he had demonstrated that a genuine issue of material fact existed as to whether the defendant's termination of his employment was in retaliation for the exercise of his right to seek workers' compensation benefits, in violation of § 31-290a, and that the court failed to view the evidence in the light most favorable to the plaintiff as the nonmoving party. We agree with the plaintiff.

The burden of proof in actions alleging a violation of § 31-290a is well established. "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate,

nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy [the] burden of persuading the [fact finder] that [the plaintiff] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citation omitted; internal quotation marks omitted.). Id., 819–20.

In the present case, the plaintiff does not challenge the court's determination that the defendant produced evidence of a legitimate, nondiscriminatory reason for its actions of terminating his employment. The plaintiff instead argues that the court erred in concluding as a matter of law that (1) he had failed to raise a genuine issue of material fact regarding his initial burden of establishing a prima facie case of discrimination, and (2) he had failed to raise a genuine issue of material fact regarding his ultimate burden of proving a discriminatory motivation or demonstrating that the defendant's proffered legitimate, nondiscriminatory reason was pretextual. We address each of the plaintiff's arguments in turn.

I

THE PLAINTIFF'S INITIAL BURDEN

The first step in analyzing a claim under § 31-290a is to determine whether the plaintiff raised a genuine issue of material fact with respect to a prima facie case of discrimination. "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . [T]o establish [a] prima facie case of discrimination, the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected [activity] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action . . . ." (Citation omitted; internal quotation marks omitted.). Id., 819.

In the present case, the defendant did not dispute or present any evidence in support of its motion for summary judgment tending to negate the plaintiff's allegations that he had engaged in a protected activity by filing a claim for workers' compensation benefits, that the defendant was aware of that protected activity, or that the defendant had taken adverse action against the plaintiff by terminating his employment. Rather, the defendant argues that the plaintiff has produced "no

evidence from which to reasonably infer that a causal connection exists between the plaintiff's exercise of any right under the act and his being issued a seasonal layoff without recall and thus no evidence that gives rise to an inference of discrimination." (Internal quotation marks omitted.)

"The causation element can be proven (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant. . . . Alternatively, causation may be satisfied by showing a sufficiently close temporal connection between the protected activity and the adverse action . . . ." (Internal quotation marks omitted.) *Jones* v. *Dept. of Children & Families*, 172 Conn. App. 14, 35, 158 A.3d 356 (2017)

The plaintiff argues that "the close temporal proximity of approximately two weeks between the plaintiff's final work injury and the decision to terminate [his employment], on its own, is enough to satisfy" his minimal burden of raising a genuine issue of material fact regarding setting forth a prima facie case. In support of his argument, the plaintiff presented the following evidence. On October 25, 2016, the plaintiff sustained a work injury, reported his injury to the defendant, and received medical treatment for his injury.[13] On November 8, 2016, the plaintiff filed a workers' compensation claim arising out of his work injury. On November 18, 2016, the plaintiff was seen at the treatment center for a follow-up examination for his injury and was released to work with a light duty work restriction.[14] Thereafter, approximately two weeks before the plaintiff received the 2016 seasonal layoff notice without recall, the defendant made the decision to terminate the plaintiff's employment. On December 9, 2016, the plaintiff received a seasonal layoff notice without recall. We agree that the plaintiff has produced evidence of a sufficiently close temporal connection between the exercise of his rights protected under the act and the defendant's adverse action against him.

The defendant contends that "temporal proximity does not, on its own, give rise to an inference of discrimination where no other evidence is offered to support a claim of retaliation." In support of its argument, the defendant cites to *Andrade* v. *Lego Systems, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-14-6053523-S (January 26, 2018) (reprinted at 188 Conn. App. 652, 655, 205 A.3d 807, cert. denied, 331 Conn. 921, 205 A.3d 567 (2019)). In *Andrade*, this court adopted the memorandum of decision of the trial court, which stated that "the question is whether the evidence can reasonably and logically give rise to an inference of

discrimination under all of the circumstances. As a jury would be entitled to review the evidence as a whole, courts must not view the evidence in piecemeal fashion in determining whether there is a trial-worthy issue." (Internal quotation marks omitted.) Id., 664–65. Ultimately, in *Andrade*, this court affirmed the trial court's granting of summary judgment on the grounds that the plaintiff had failed to present evidence that established that "the adverse action took place under circumstances permitting an inference of discrimination." (Internal quotation marks omitted.) Id., 664.

Our review of the record does not support the defendant's argument that the plaintiff has produced no other evidence to support a claim of retaliation. Rather, the plaintiff produced additional evidence sufficient to raise a disputed issue of fact as to whether the adverse action took place under circumstances permitting an inference of discrimination.[15] In his memorandum of law in support of his objection to the defendant's motion for summary judgment, the plaintiff argued that "[t]here is also a multitude of evidence that the defendant was negatively disposed toward workers' compensation injuries in general, and the plaintiff's injuries and resultant work injuries more specifically." Specifically pertaining to the plaintiff's October 25, 2016 work injury, the plaintiff produced evidence that after he was examined at the treatment center and provided a first work status report that assigned him light duty work restrictions, the defendant's safety personnel, Deluco, had a conversation with the plaintiff's physician, without the plaintiff's knowledge, which resulted in Deluco procuring a second work status report that eliminated the plaintiff's light duty work restrictions. Woodin testified that the purpose of this conversation with the physician was "to see if we can lift the significant restrictions to potentially avoid a recordable injury." The plaintiff argued that the defendant's "specific actions to change the plaintiff's work status from light duty to full duty without the plaintiff's knowledge or consent" was "a deliberate effort to minimize the size or extent of the plaintiff's workers' compensation claim." Furthermore, in support of the plaintiff's argument pertaining to the defendant's negative disposition toward workers' compensation injuries, the plaintiff submitted the deposition testimony of Satagaj, who testified that the plaintiff had "[p]ersonal responsibility" in sustaining his work injuries, despite also acknowledging that the plaintiff had not violated any company rule or policy when his injuries occurred. Satagaj testified that he was involved in the decision to issue the plaintiff a seasonal layoff without recall. See footnote 10 of this opinion.

Viewing the evidence in the light most favorable to the plaintiff as the nonmoving party, we conclude that the plaintiff presented evidence sufficient to raise a genuine issue of material fact regarding a causal connection between the protected activity and the adverse

action. Thus, we conclude that the plaintiff presented evidence sufficient to raise a genuine issue of material fact with respect to his initial burden of setting forth a prima facie case of discrimination.

## II

### THE PLAINTIFF'S ULTIMATE BURDEN

We next turn to the plaintiff's argument that the court erred in determining as a matter of law that he had failed to raise a genuine issue of material fact regarding his ultimate burden of proving a discriminatory motivation or demonstrating that the defendant's proffered legitimate, nondiscriminatory reason was pretextual. Under the third prong of the *McDonnell Douglas* framework, the plaintiff "must satisfy [the] burden of persuading the [fact finder] that [the plaintiff] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) *Barbee* v. *Sysco Connecticut, LLC*, supra, 156 Conn. App. 820.

"[E]vidence . . . that a retaliatory motive played a part in the adverse employment action . . . may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by a defendant." (Citation omitted; internal quotation marks omitted.). *Hammond* v. *Bridgeport*, 139 Conn. App. 687, 695–96, 58 A.3d 259 (2012), cert. denied, 308 Conn. 916, 62 A.3d 527 (2013). "Evidence establishing the falsity of the legitimate, nondiscriminatory reasons advanced by the employer may be, in and of itself, enough to support the trier of fact's ultimate finding of intentional discrimination." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 401, 880 A.2d 151 (2005); see also *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 79, 111 A.3d 453 (2015) ("disbelief of an employer's explanation for an adverse employment action, in combination with the plaintiff's prima facie case of discrimination, may, under some circumstances, be sufficient to meet the plaintiff's ultimate burden of proving intentional discrimination" (emphasis omitted)). "Of course, to defeat summary judgment . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." (Internal quotation marks omitted.) *Taing* v. *CAMRAC*, LLC, 189 Conn. App. 23, 28–29, 206 A.3d 194 (2019). "We bear in mind that it is the plaintiff's ultimate burden to prove that the defendant intentionally discriminated against her . . . ." (Internal quotation

marks omitted.) *Dickman* v. *University of Connecticut Health Center*, 162 Conn. App. 441, 448, 132 A.3d 739 (2016).

In the present case, the defendant provided evidence of a legitimate, nondiscriminatory reason for issuing the plaintiff a seasonal layoff without recall on the basis of the plaintiff's several "safety incidents." The defendant's memorandum of law in support of its motion for summary judgment highlighted as "the plaintiff's safety issues" the October 10, 2016 violation of a safety rule involving the plaintiff's failure to return a machine guard to its proper place. The defendant separately listed "the plaintiff's injuries and workers' compensation claims" as follows: (1) the August 7, 2013 work injury to his left shoulder; (2) the December 9, 2015 work injury to his right elbow; and (3) the October 25, 2016 work injury to his right elbow. The defendant indicated that the "safety incidents" that served as a basis for the plaintiff's termination included all of these incidents. The defendant contends that the plaintiff cannot satisfy his ultimate burden because "[t]here is simply no evidence that [the defendant's] decision not to recall the plaintiff because of four 'safety incidents' is pretextual."

On appeal, the plaintiff argues that "the trial court failed to consider evidence that [tended to demonstrate] that the reason for the plaintiff's termination was false, as well as direct and circumstantial evidence that [tended to show that] the defendant intended to discriminate against the plaintiff due to his exercise of rights under the [act]."

The plaintiff presented the following evidence in support of his contention that the defendant's proffered reason for the termination of his employment on the basis of several "safety incidents" was pretextual. First, the plaintiff presented evidence of his disparate treatment relative to his other coworkers in the Manchester asphalt plant who were involved in the October 10, 2016 machine guard safety incident. The plaintiff submitted the deposition testimony of the defendant's asphalt division manager, Marrone, who testified that the machine guard safety incident resulted in the plaintiff's "first written counseling." The plaintiff alleged that this "was the only formal discipline related to safety that [he] ever received." Furthermore, the plaintiff submitted the deposition testimony of Satagaj, who testified that the defendant never gave any consideration to laying off the other two employees involved in the machine guard safety incident, neither of whom had any history of work injuries. The plaintiff argues that this evidence implies "that the defendant was specifically motivated by the plaintiff['s] other 'safety incidents'—i.e., his work injuries—otherwise, if the safety guard incident was what motivated the defendant, it would have given some discipline, if not the same discipline, to the other employees involved in the incident." We agree with the

plaintiff that evidence that only the plaintiff's employment was terminated after the October 10, 2016 machine guard safety incident involving two other employees tends to demonstrate that something other than this safety incident motivated the defendant's decision to terminate the plaintiff, and that the only other "safety incidents" referred to by the defendant were the plaintiff's work injuries where it was determined that no rules or safety policies were violated. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 695–96 ("evidence . . . that a retaliatory motive played a part in the adverse employment action . . . may be established . . . through . . . evidence such as disparate treatment of fellow employees who engaged in similar conduct" (citation omitted; internal quotation marks omitted)).

Second, the plaintiff presented evidence that he had not violated any rule or safety policy on the various occasions when he suffered work injuries. The defendant acknowledged in various depositions of its representatives that none of the plaintiff's work injuries was the result of any violation of a company rule or safety policy. The plaintiff argues that, "[i]n light of the contrary evidence that the plaintiff's 'safety incidents' were work injuries where the plaintiff did not violate any rule and should not have the incident held against him . . . the defendant's proffered reason for the plaintiff's termination was 'not worthy of belief' . . . ." We agree with the plaintiff that evidence that the plaintiff's work injuries motivated the defendant's decision to terminate the plaintiff, and that his work injuries were not the result of any violation of a company rule or safety policy, factually supports the plaintiff's allegation that the defendant's proffered reason for the plaintiff's termination on the basis of several "safety incidents" was false or that the prohibited factor was at least one of the motivating factors. See *Taing* v. *CAMRAC, LLC*, supra, 189 Conn. App. 28–29; see also *Jacobs* v. *General Electric Co.*, supra, 275 Conn. 401 ("[e]vidence establishing the falsity of the legitimate, nondiscriminatory reasons advanced by the employer may be, in and of itself, enough to support the trier of fact's ultimate finding of intentional discrimination" (internal quotation marks omitted)).

Next, the plaintiff presented the following evidence that tends to demonstrate that the defendant intended to discriminate against him. First, the plaintiff presented evidence with regard to the defendant's procurement of a second work status report subsequent to the plaintiff's October 25, 2016 work injury, without the plaintiff's knowledge, which eliminated the plaintiff's light duty work restrictions. The plaintiff presented the deposition testimony of Woodin who testified that the defendant's intention behind seeking to procure a second work status report was "to see if [the defendant could] lift the significant [work] restrictions to potentially avoid

a recordable injury." The plaintiff argues that because the act affords employees the right to workplace accommodations of light duty work restrictions set forth in General Statutes § 31-313, this evidence demonstrates the defendant's "hostility to workers' compensation claims and the requirement to accommodate light duty restrictions . . . ." The defendant contends that, despite the change to the plaintiff's work status report, the plaintiff's October 25, 2016 work injury nevertheless resulted in a recordable injury and the defendant nevertheless provided the plaintiff light duty work. We agree with the plaintiff that, regardless of the success of the defendant's efforts, evidence of its attempts to procure a second work status report that could potentially impede the plaintiff's exercise of his rights afforded to him under the act factually supports his allegation that the defendant intended to discriminate against him. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 695–96 ("evidence . . . that a retaliatory motive played a part in the adverse employment action . . . may be established . . . directly through evidence of retaliatory animus directed against a plaintiff by a defendant" (citation omitted; internal quotation marks omitted)).

Second, the plaintiff presented evidence of direct statements made by representatives of the defendant that the plaintiff was held personally responsible for his work injuries. The plaintiff submitted the deposition testimony of Satagaj, who testified that the plaintiff had "[p]ersonal responsibility" in sustaining his work injuries. Satagaj testified that he held the plaintiff personally responsible for his work injuries despite also acknowledging that the plaintiff had not violated any company rule or policy when the injuries occurred. Satagaj also testified that he was involved in the decision to issue the plaintiff a seasonal layoff without recall. The plaintiff argues that this evidence "would support that the defendant had a retaliatory animus toward the plaintiff because of his work injuries." We agree with the plaintiff that these direct statements from the defendant's management factually support the plaintiff's allegation that defendant had a retaliatory animus directed against him for his work injuries. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 695–96 ("evidence . . . that a retaliatory motive played a part in the adverse employment action . . . may be established . . . directly through evidence of retaliatory animus directed against a plaintiff by a defendant" (citation omitted; internal quotation marks omitted)).

Third, the plaintiff presented evidence of the close temporal proximity between his exercise of his rights protected under the act and the defendant's adverse action against him. The plaintiff established that, on October 25, 2016, he sustained a work injury; on November 8, 2016, the plaintiff filed a workers' compensation claim arising out of that work injury; and, on November 18, 2016, the plaintiff was released to work with a light

duty work restriction. Furthermore, Satagaj testified that, approximately two weeks before the plaintiff received the 2016 seasonal layoff notice without recall, the defendant's representatives made the decision to terminate the plaintiff's employment; and, on December 9, 2016, the plaintiff received a seasonal layoff notice without recall. The plaintiff argues that "the close temporal proximity of approximately two weeks between [his] final work injury and the decision to [terminate his employment]" demonstrates that a retaliatory motive played a part in the adverse employment action. We agree with the plaintiff that evidence of a close temporal proximity between the protected activity and the adverse employment action factually supports his allegation that the defendant intended to discriminate against him. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 695–96 ("evidence . . . that a retaliatory motive played a part in the adverse employment action . . . may be established . . . indirectly by showing that the protected activity was followed closely by discriminatory treatment" (citation omitted; internal quotation marks omitted)).

Our review of the record indicates that the plaintiff has presented evidence that a discriminatory reason motivated the defendant as well as evidence that the defendant's proffered explanation is unworthy of credence. See *Barbee* v. *Sysco Connecticut, LLC*, supra, 156 Conn. App. 820. Viewing the evidence in the light most favorable to the plaintiff as the nonmoving party, we conclude that the plaintiff presented evidence sufficient to raise a genuine issue of material fact that a discriminatory reason more likely motivated the defendant or that the defendant's proffered explanation is unworthy of credence. Thus, we conclude that the plaintiff presented evidence sufficient to raise a genuine issue of material fact with respect to his ultimate burden of proving discrimination. Accordingly, we conclude that a genuine issue of material fact exists as to whether the plaintiff was the victim of discrimination in violation of § 31-290a and, therefore, the court erred in rendering summary judgment.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.

[1] General Statutes § 31-290a provides in relevant part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter. . . ."

[2] "Ever since [the Connecticut Supreme Court's] holding in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, [216 Conn. 40, 53, 578 A.2d 1054 (1990)], we have looked to federal employment retaliation law for guidance [i]n setting forth the burden of proof requirements in a § 31-290a action . . . . In *McDonnell Douglas* [*Corp.*] v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the United States Supreme Court set forth the basic

allocation of burdens and order of presentation of proof in cases involving claims of employment discrimination. The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the [fact finder] that she was the victim of discrimination either directly by persuading the [fact finder] . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 270 Conn. 751, 767–68, 855 A.2d 196 (2004).

[3] The defendant's Asphalt Division Manager, Joseph Marrone, testified that recordable injury reports are completed by the defendant pursuant to requirements set forth by the federal Occupational Health and Safety Administration (OSHA). Any time that an employee is involved in a "recordable" work injury, the defendant is required to report that injury to OSHA. On the basis of the total number of injuries reported by the defendant, OSHA then calculates the defendant's recordable incident rate and compares that rate to other employers. If the defendant has a high recordable incident rate relative to comparable employers, OSHA can take remedial action against the defendant.

[4] The plaintiff submitted as part of his opposition to summary judgment the deposition testimony of Marrone, who testified as to the defendant's disciplinary policy. Marrone stated that "[t]here is a hierarchy [of counseling] where there's verbal counseling and then there's written counseling." Marrone further testified that the October, 2016 employee counseling record was the plaintiff's "first written counseling." In his deposition, the plaintiff testified that "[o]ther than [the October, 2016 employee counseling record] I've never had a verbal, never had a written, I have never had nothing."

[5] See footnote 3 of this opinion.

Woodin testified that this policy exists to help "manage the treatment" by making sure employees receive "more or less immediate care . . . [and] to review after care, if there is any opportunity that we could not count it as a recordable injury or lost time event." Woodin further testified that such effort would not interfere with or "negatively impact any medical care . . . that the employee will receive." Marrone testified that "many times the claim can be minimized" but that "[u]ltimately the doctor has the decision."

[6] Despite the change to the plaintiff's work status to "without restrictions," the plaintiff's October 25, 2016 work injury nevertheless resulted in a recordable injury. Furthermore, the defendant provided the plaintiff with light duty work for the remainder of the 2016 season.

[7] The defendant's memorandum of law in support of its motion for summary judgment highlighted as the "plaintiff's safety issues" the October 10, 2016 violation of a safety rule involving the plaintiff's failure to return a machine guard to its proper place. The defendant separately listed the "plaintiff's injuries and workers' compensation claims" as follows: (1) the August 7, 2013 work injury to his left shoulder; (2) the December 9, 2015 work injury to his right elbow; and (3) the October 25, 2016 work injury to his right elbow. The defendant indicated that the "safety incidents" that served as a basis for the plaintiff's termination included all of these incidents.

[8] The defendant supported its motion with, inter alia, affidavits of Marrone, Regional Human Resources Manager Jackie Zimmer, and Woodin, and excerpts of deposition testimony of the plaintiff.

[9] In support of the plaintiff's argument that he was "terminated because of his work injuries and exercise of [his] rights under the [act]," the plaintiff also submitted the deposition testimony of Satagaj, who testified that he was involved in the decision to issue the plaintiff a seasonal layoff without recall. Satagaj testified that the plaintiff had "[p]ersonal responsibility" in the occurrence of his work injuries, despite acknowledging that the plaintiff had not violated any company rule or policy when the injuries occurred.

[10] The plaintiff supported his objection to the motion for summary judgment with, inter alia, excerpts of deposition testimony of the plaintiff, Marrone, Woodin, and Satagaj.

[11] The plaintiff additionally claims on appeal that the court erred in applying the "motivating factor" standard of the third prong of the *McDonnell*

*Douglas* burden shifting framework in analyzing his claim of retaliatory discharge under § 31-290a. The plaintiff argues that under the motivating factor standard, he was "required only to demonstrate that the [defendant's] decision to terminate him [was] motivated, at least in part, by his exercise of rights under the [act]." The plaintiff further contends that, "in its [memorandum of decision], the trial court held the plaintiff to a much stricter standard, effectively requiring him to demonstrate that the defendant's entire seasonal layoff was conducted for the purpose of retaliating against him due to his exercise of rights under the [act]." Because we reverse the decision of the trial court on other grounds, we need not address the plaintiff's additional claim.

[12] The plaintiff additionally claims on appeal that the court, in granting summary judgment for the defendant, failed to adhere to General Statutes § 31-51bb, *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 628 A.2d 946 (1993), and *Spiotti* v. *Wolcott*, 326 Conn. 190, 163 A.3d 46 (2017), because it considered the claims and outcome of the plaintiff's union grievance. Because we reverse the decision of the trial court on other grounds, we need not address the plaintiff's additional claim.

[13] The act affords employees the right to receive medical treatment for workplace injuries. General Statutes § 31-294d (a) (1) provides in relevant part: "The employer, as soon as the employer has knowledge of an injury, shall provide a competent physician, surgeon or advanced practice registered nurse to attend the injured employee and, in addition, shall furnish any medical and surgical aid or hospital and nursing service, including medical rehabilitation services and prescription drugs, as the physician, or advanced practice registered nurse [or] surgeon deems reasonable or necessary. . . ."

[14] The act affords employees the right to workplace accommodations of light duty work restrictions. General Statutes § 31-313 (a) (1) provides in relevant part: "Where an employee has suffered a compensable injury which disables him from performing his customary or most recent work, his employer at the time of such injury shall transfer him to full-time work suitable to his physical condition where such work is available, during the time that the employee is subjected to medical treatment or rehabilitation or both and until such treatment is discontinued on the advice of the physician conducting the same  . . . ."

[15] Because the plaintiff produced evidence of a close temporal proximity between the exercise of his rights protected under the act and the defendant's adverse action against him as well as additional evidence sufficient to raise a disputed issue of fact as to whether the adverse action took place under circumstances permitting an inference of discrimination, we need not address the merits of the defendant's contention that "temporal proximity does not, on its own, give rise to an inference of discrimination where no other evidence is offered to support a claim of retaliation."

————————————————————